1  Semha Alwaya (SBN 141999)
   salwaya@alwayalaw.com
2  T.J. Kitchen (SBN 160853)
   Law Offices of Semha Alwaya
3  2000 Powell Street, Suite 125
   Emeryville, CA  94608
4  Telephone: (510) 595-7900
   Facsimile:  (510) 595-9049
5
   Attorneys for Plaintiff
6  COLONY INSURANCE COMPANY

7              UNITED STATES DISTRICT COURT

8      SOUTHERN DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

9

10  COLONY INSURANCE COMPANY,          Case No.: '14CV1724 W      BGS

11              Plaintiff,              COMPLAINT FOR DECLARATORY RELIEF

12  vs.

13  MONTECITO CCV, LLC; MONTECITO
    COUNTRY CLUB, LP; MONTECITO
14  COUNTRY CLUB, LLC; MONTECITO
    PROPERTY COMPANY, LLC;
15  EDWARD W. CONK, II; CHRISTOPHER
    M. CONK; JOELLYN E. CONK; and
16  LA VISTA AT LAGUNA NIGUEL
    COMMUNITY ASSOCIATION
17

18              Defendants.

19

20          COMES NOW, plaintiff COLONY INSURANCE COMPANY ("COLONY"), a foreign

21  corporation, by and through its undersigned counsel, and herein files this Complaint for

22  Declaratory Relief against the Defendants, MONTECITO CCV, LLC; MONTECITO COUNTRY

23  CLUB, LP; MONTECITO COUNTRY CLUB, LLC; MONTECITO PROPERTY COMPANY,

24  LLC; EDWARD W. CONK, II; CHRISTOPHER M. CONK; JOELLYN E. CONK; and LA

25  VISTA AT LAGUNA NIGUEL COMMUNITY ASSOCIATION.

26

27

28                              -1-

PLAINTIFF COLONY INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY RELIEF

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction pursuant to 28 U.S.C. Section 1332 in that all plaintiffs are diverse from all defendants, and the amount in controversy exceeds $75,000.00.  Venue is appropriate pursuant to 28 USC Section 1391 because defendants are subject to personal jurisdiction in this District.

**THE PARTIES**

2.      At all material times, hereto, plaintiff COLONY was and is a foreign corporation, domiciled in the Commonwealth of Virginia, with its principal place and business located in Richmond, Virginia and is thus a citizen of Virginia.

3.      At all material times hereto, COLONY was and is an excess and surplus lines insurer issuing policies of insurance in the State of California through general agents and/or managing general agents.

4.      At all material times hereto, COLONY is informed and believes and thereon alleges that defendant MONTECITO, CCV, LLC was and is a Delaware limited liability company, and is thus a citizen of Delaware.

5.      At all material times hereto, COLONY is informed and believes and thereon alleges that defendant MONTECTIO COUNTRY CLUB, LP was and is a Florida limited partnership and was and is the manager of MONTECITO CCV, LLC.

6.      At all material times hereto, COLONY is informed and believes and thereon alleges that defendant MONTECITO COUNTRY CLUB, LLC was and is a Florida limited liability company, and is thus a citizen of Florida, was and is the General Partner of Montecito CCV, LLC.

7.      At all material times hereto, COLONY is informed and believes and thereon alleges that defendant MONTECITO PROPERTY COMPANY LLC was and is a Florida limited liability company.

8.      At all material times hereto, COLONY is informed and believes and thereon alleges that defendants EDWARD W. CONK II, CHRISTOPHER M. CONK and JOELLYN E. CONK (collectively, the "CONKS") were and are residents of Santa Barbara County, California.

-2-

9.     At all material times hereto, COLONY is informed and believes and thereon alleges that defendant LA VISTA AT LAGUNA NIGUEL COMMUNITY ASSOCIATION, was and is a California non-profit mutual benefit corporation (the "ASSOCIATION").

10.     MONTECITO, CCV, LLC; MONTECTO COUNTRY CLUB, LP; MONTECITO COUNTRY CLUB, LLC; MONTECITO PROPERTY COMPANY, LLC; EDWARD W. CONK II, CHRISTOPHER M. CONK, JOELLYN E. CONK are referred to as defendant MONTECITO.

11.     COLONY is informed and believes and thereon alleges that all defendants were the agents, servants, and/or employees of each other, and in doing or failing to do the acts herein alleged were acting within the scope and course of such agency, service and/or employment.

## THE COLONY INSURANCE POLICY

12.     COLONY issued a Commercial General Liability Insurance Policy, Policy No. GL183286, effective May 24, 2005 to May 24, 2006, to Montecito Investment, a non-party to this litigation.

13.     The COLONY Policy provides limits of bodily injury and property damage liability of $1,000,000 per occurrence and $2,000,000 general aggregate.  A true and correct copy of the Policy is attached hereto and incorporated by reference herein as Exhibit "A."  The Policy provides in relevant part as follows:

> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1.     Insuring Agreement
>
>     a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …
>
>           * * *
>
>     b.     This insurance applies to "bodily injury" and "property damage" only if:
>
>         (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

-3-

(2)    The "bodily injury" or "property damage" occurs during the policy period; and

(3)    Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. …

       * * *

d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed      under Paragraph 1. Of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

2.    **Exclusions**

This insurance does not apply to:

       * * *

j.    **Damage to Property**

"Property damage" to:

(1)    Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2)    Premises you sell, give away or abandoned, if the "property damage" arises out of any part of those premises.

       * * *

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

-4-

(6)     That particular part of any property that be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

l.     **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

## SECTION IV - DEFINITIONS

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

16.     "Products-completed operations hazard"

a.     Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a)     When all of the work called for in your contract has been completed.

(b)     When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.     Does not include "bodily injury" or "property damage" arising

-5-

PLAINTIFF COLONY INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY RELIEF

out of:

> (1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
>
> (2)  The existence of tools, uninstalled equipment or abandoned or unused materials; or

(2)  Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17.  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

22.  "Your work";

a.  Means:

> (1)  Work or operations performed by you or on your behalf; and
> (2)  Materials, parts or equipment furnished in connection with such work or operations.

b.  Includes:

> (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>
> (2)  The providing of or failure to provide warnings or instructions.

14.  The Colony policy contains Form U159-0702, which provides:

## LIMITATION OF COVERAGE TO BUSINESS DESCRIPTION

\*\*\*\*

### SCHEDULE

### BUSINESS DESCRIPTION:

-6-

60010 – APARTMENT BUILDINGS

62003 – CONDOMINIUM – RESIDENTIAL – (ASSOCIATION RISK ONLY)

48925 – SWIMMING POOLS

    A.    SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b. is amended and the following added:

        (4)    The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.
            * * *

15.    The foregoing Form U159-0702 was amended by Policy Change Number 6 to include "SITE INSPECTIONS FOR PURPOSES OF INSPECTION FOR ACQUISITION PURPOSES" as an insured business description, effective September 29, 2005.

16.    The Colony policy contains another endorsement, Form CG 21 34 01 87, which provides:

**EXCLUSION – DESIGNATED WORK**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SCHEDULE

Description of your work:

**ALL CONSTRUCTION OPERATIONS PERTAINING TO APARTMENT TO CONDOMINIUM CONVERSION**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

-7-

17.     Finally, the COLONY Policy also includes Form U004-0702, which provides in pertinent part:

### MISCELLANEOUS EXCLUSIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

\* \* \*

EXCLUSION – PROFESSIONAL SERVICES

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of or resulting from the rendering or failure to render any "professional service" except by endorsement to this policy and then only to the extent of such endorsement.

"Professional Service" means:

\* \* \*

(2)     Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3)     Engineering services, including related supervisory or inspection services;

\* \* \*

### THE LA VISTA ACTION

18.     On March 18, 2013, Plaintiff, the ASSOCIATION, filed a Second Amended Complaint ("SAC") in the action captioned *La Vista at Laguna Niguel Community Association v. Montecito CCV, LLC, et al.*, Superior Court of California for the County of Orange, Case No. 30-2010-00352618 (the "UNDERLYING ACTION"). A true and correct copy of the SAC is attached here to and incorporated by reference herein as Exhibit "B".

19.     The ASSOCIATION is a nonprofit mutual benefit California corporation that is comprised of condominium units, buildings and structures upon certain parcels of real property generally known as "La Vista at Laguna Niguel Condominiums." (the "Project") (SAC ¶ 1).

20.     The Defendants are Montecito CCV, LLC, Montecito Country Club, LP, Montecito County Club, LLC, Montecito Property Company, LLC (collectively referred to as

-8-

"MONTECITO"), Edward D. Conk II, Christopher M. Conk, Joellyn E. Conk (collectively, the "Conks"), and Merrill Lynch L.P. Holdings, Inc. ("Merrill") (SAC ¶¶ 7-11.1). The SAC alleges that the Conks and Merrill are alter egos of Montecito CCV, LLC. (SAC ¶ 12.1).

21.    The SAC contains the following general allegations:

12.2    The Conks controlled and directed the activities of Montecito CCV, LLC directly and indirectly through various subordinates, agents, servants and hirelings. The Conks acquired between them an approximately 60% ownership interest in Montecito Country Club Limited Partnership, which in turn had an approximately 20% ownership interest in Montecito CCV, LLC. Montecito Country Club Limited Partnership was one of two members of Montecito CCV, LLC; the other was Montecito Country Club, Inc. The Conks owned Montecito Country Club, Inc. in equal shares of 1/3, 1/3, 1/3. Montecito Country Club, Inc. was the managing member of Montecito CCV, LLC, and through their ownership and control of Montecito County Club, Inc., the Conks directed and controlled the activities of Montecito CCV, LLC.

* * *

12.4    The Conks acquired  the Project during its conversion from apartments to condominiums and completed the conversion. During the conversion, and prior to the sale of any units in the Project or the delivery of control of the Association to original condominium purchase association members, the Conks were advised through their subordinate, agents, servants and hirelings of substantial problems with the construction of the Project, including but not necessarily limited to differential movement and water intrusion at pedestrian bridges and supported walkways, improper construction and past maintenance of balcony slopes and related scuppers and membranes and resulting water damage and possible damaged structural framing, deteriorating wood throughout the Project, dry rot and termite infestations at the Project, roofing problems and other problems,   Instead of correcting these problems, the Conks budgeted approximately $3,000,000 for a "minor renovation" which mostly included "cosmetic exterior upgrades such as: painting the exterior" of the buildings at the Project. These "upgrades" covered up and masked the problems so that they were not easily observable.

* * *

12.6    The Conks, through Montecito CCV, LLC, represented to the purchasers of the condominium units that Montecito CCV, LLC had caused the major systems of the Project to be inspected and that the inspections did not result in the discovery of any

-9-

substantial defects or malfunctions in any of those systems. The representation was false when made and the Conks either knew or should reasonably have known that it was false when made. In so doing, the Conks failed to carry out the requirements of California Civil Code § 1134, and this failure was willful on the part of Montecito and also willful on the part of the Conks, and each of them, either on their own part or on the part of subordinates, agents, servants and hirelings for whose conduct the Conks are responsible.

12.7    The Conks by their conduct misrepresented the condition of the Project to the purchasers and to Plaintiff. The Conks, through Montecito, also failed to establish proper reserves for the association. This conduct was willful and constituted gross negligence on the part of Montecito Country Club Limited Partnership and the Conks.

                                                    * * *

12.9    Although the Conks agreed through Montecito Country Club LLC to do all things necessary to the renovation of the units in the Project, the Conks failed to do so. The Conks also agreed through Montecito Country Club LLC to, at the completion of the conversion and sale of all units in the Project, make adequate provision for all debts and liabilities of Montecito CCV, LLC "including the establishment of a cash escrow fund for contingent liabilities in such amount and for such term as" they might determine. The Conks did not, however, do this. Instead, they failed to establish a reasonable cash escrow fund for such contingent liabilities, especially liabilities alleged herein, leaving Montecito CCV, LLC an empty shell unable to answer for such liabilities.

                                                    * * *

12.12   Montecito Country Club Limited Partnership's failure to renovate the Project was an action inconsistent with the Agreement's "Condominium Conversion Parameters," which failure was in turn a "Major Decision" under the Agreement that required Merrill's written consent. …

                                                    * * *

13.     Plaintiff has discovered the Project; has been and is experiencing construction failures, defective conditions and damages of the real property and structures thereon including without limitation, roofs, building exteriors, windows, doors, foundations, soils, electrical, plumbing and mechanical components and systems, and that said components are not of merchantable quality nor were they designed, erected, constructed, installed, inspected, maintained, repaired and converted, in a workmanlike manner but instead, are defective and are causing physical damages to other tangible

-10-

property.

\* \* \*

15.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, did inspect and market said condominium units with full knowledge of the existence of defects, deficiencies and negligently performed work, their causes and consequential physical damage to tangible property.

16.    Plaintiff is informed and believed and thereon alleges that Defendants, and each of them, in the financial planning, inspection, design, construction, installation, maintenance, repair, conversion and supervision of the Project, either negligently, willfully and/or intentionally engaged in a calculated course of conduct to reduce the costs of development by the use of substandard, deficient and inadequate design, construction techniques and materials and/or inadequately established and/or funded the Association's reserve accounts so that lower assessment were levied thereon to lower the burden on Defendants during the period Defendants had the duty to subsidize assessments and in addition to make the condominium units more attractive for sale.

17.    Plaintiff is informed and believes and thereon alleges Defendants, and each of them, ignored repairing or correcting the causes of the defects and damages and pursued a course of financial planning, inspection, design, construction, installation, maintenance, repair, conversion and supervision of the Project so as to increase their profit from the Project at the expense of the Plaintiff.

\*\*\*

19.    Plaintiff is informed and believes and thereon alleges that instead of causing the necessary and required inspection, reconstruction and repair of the Project, Defendants failed to discover defects, deficiencies and damages and instead have caused cosmetic temporary or ineffective repairs to be made to various portions of the Project for the purpose of increasing profits at Plaintiff's and its members' expense.

22.    As more particularly set forth in the separate counts below, based upon the allegations in the Underlying Action, and the facts and circumstances giving rise to or supporting those allegations, there are provisions, terms, conditions, definitions, and/or exclusions in the COLONY Policy which operate to preclude coverage for MONTECITO under the Policy. This lack of coverage applies to any duty of COLONY to defend MONTECITO as well as any duty of COLONY to indemnify MONTECITO for any damages awarded in favor of plaintiff and against

PLAINTIFF COLONY INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY RELIEF

1  MONTECITO in the Underlying Action.

2      23.    Notwithstanding this lack of coverage, MONTECITO and/or the ASSOCIATION

3  continue to maintain that coverage is present under the COLONY Policy.  As a consequence,

4  COLONY is currently providing MONTECITO with a defense to the allegations and claims of the

5  Underlying Action.  The foregoing creates a current and present controversy between COLONY,

6  on the one hand, and MONTECITO and/or the ASSOCIATION on the other hand.

7      24.    This action for Declaratory Relief is not made for the purpose of seeking a legal

8  opinion, but rather is needed to resolve the existing dispute which creates doubt between the

9  parties as to their legal rights, responsibilities and obligations.

10     25.    The substantive law of the State of California governs this coverage action, as the

11  Project is in California and the Underlying Action was filed in California, the defense of

12  MONTECITO is being provided in California.

13  ## COUNT I – NO COVERAGE FOR FIRST CAUSE OF

14  ## ACTION OF UNDERLYING ACTION

15     26.    COLONY realleges and incorporates by this reference all preceding paragraphs

16  above, in their entirety, as though fully set forth herein.

17     27.    In addition to the foregoing allegations in the SAC in the Underlying action, the First

18  Cause of Action for Negligence in the Underlying Action, in pertinent part alleges the following

19  against MONTECITO:

20     22.    Plaintiff is informed and believes and thereon alleges Defendants,
        and each of them, were and are developer, Declarant, builders,
21        general contractors and converters who participated in the process
        of financial planning, design, engineering, manufacture,
22        construction and/or conversion of condominium units, buildings,
        improvements and structures of the Project and who performed
23        works of labor, supplied materials, equipment and/or services
        necessary for the building, conversion and construction, including
24        supervision of construction and conversion of the Project with the
        knowledge that the condominium units would be sold to and used
25        by members of the public.  In so doing, Defendants and each of
        them, caused the subject premises and subject structures to be
26        designed, engineered constructed and/or converted through their
        own works of labor, their supplying of materials, equipment and
27

28                                        -12-

services, and through causing other contractors and subcontractors, to perform work of labor, to supply materials, equipment and services in order to properly convert and complete the Project and subject structures so that it could be sold to and used by members of the public.

23. Plaintiff is informed and believes and thereon alleges Defendants, and each of them, negligently, carelessly, tortiously, and wrongfully failed to use reasonable care in the financial planning, preparation, design, manufacture, inspection, construction, maintenance, repair and/or conversion of the real property and structures thereon, including without limitation, soils, roofs, docks, stucco, windows, doors, electrical plumbing, and mechanical components and systems.

24. Plaintiff is informed and believes and thereon alleges Defendants, and each of them, perform financial planning, work, labor and/or services for the construction and conversion of the Project, and each knew or should have known that if the Project was not properly or adequately financially planned for, inspected, designed, engineered, supervised, converted, maintained, repaired and/or constructed, and that the Plaintiff and its members would be substantially damaged thereby.

25. The Defendants and each of them, named herein, were under a duty to exercise ordinary care as financial planner and budget preparer, builder, contractor, converter and manager of the Project to avoid reasonably foreseeable financial and physical damages to the Plaintiff and its members and knew or should have known that Plaintiff and its members would suffer the damages set forth herein if said Defendants, and each of them, failed to perform their duty to cause the subject premises and subject structures to be designed, engineered, supervised, inspected, converted, maintained, repaired and/or constructed in a proper workmanlike manner and fashion.

26. Defendants and each of them failed and neglected to perform the planning budgeting, work, labor and services properly or adequately …

27. Plaintiff is informed and believes and thereon alleges that as a direct and proximate result of the conduct described here, Plaintiff has suffered damages in an amount precisely unknown but believed to be within the jurisdiction of this Court in that it has been and will hereafter be required to perform investigations and works of repair, restoration, and construction to portions of the structures to prevent further damage and to restore the structures to their proper

condition and/or will suffer damages in an amount the full nature and extent of which shall be ascertained according to proof at trial.

28.     The allegations of the First Cause of Action against MONTECITO in the Underlying Action's SAC are not within the plain language of the "Limitation of Coverage to Business Description" endorsement to the COLONY Policy.

29.     The allegation of the First Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "Exclusion – Designated Work" endorsement of the COLONY Policy.

30.     The allegations of the First Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "owned property" exclusion contained in the COLONY Policy.

31.     The allegations of the First Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "alienated premises" exclusion contained in the COLONY Policy.

## COUNT II – NO COVERAGE FOR SECOND CAUSE
## OF ACTION OF UNDERLYING ACTION

32.     COLONY realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

33.     In addition to the foregoing allegations in the SAC in the Underlying action, the Second Cause of Action for Negligence Per Se in the Underlying Action alleges, in pertinent part, the following against MONTECITO:

29.     The conduct, acts and omissions of Defendants, described above, constituted and continue to constitute, a violation of the Bus. & Prof. Code, section 11000, et seq., including but not limited to section 11012 which provides:

"It is unlawful for the owner, his agent, or subdivider of the project, after it is submitted to the Department of Real Estate, to materially change the setup of such offering without first notifying the Department of Real Estate in writing of such intended change. This section only applies to those changes of which the owner, his agent or subdivider has knowledge or constructive knowledge."

-14-

30. Plaintiff is informed and believes and on that basis alleges that Defendants' violation of said statutes proximately caused and contributed to Plaintiff's damages, such damages being of the type that the statute was designed to protect against, and Plaintiff being a member of the class of persons for whose protection the statute was adopted.

31. Plaintiff is informed and believes and on that basis alleges that the conduct of Defendants was negligently, willfully and/or knowingly undertaken by Defendants with the intention of depriving Plaintiff of its legal rights and otherwise causing injury to Plaintiff and/or was undertaken with a reckless disregard for the likely consequences to Plaintiff.

32. As a direct and proximate result of the violation of statutory duties alleged above, Plaintiff has suffered damages in an amount to be proved at trial in that Plaintiff has been deprived of the value of work promised to be performed, which promise was part of the approval process and representations made to the Department, the public in general and Plaintiff specifically. Plaintiff is entitled to the full value of the work promised to be performed absent notice to and an agreement otherwise by the Department.

34. The allegations of the Second Cause of Action against MONTECITO in the Underlying Action's SAC are not within the plain language of the "Limitation of Coverage to Business Description" endorsement to the COLONY Policy.

35. The allegations of the Second Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by "Exclusion – Designated Work" endorsement of the COLONY Policy.

36. The allegations of the Second Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "owned property" exclusion contained in the COLONY Policy.

37. The allegations of the Second Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "alienated premises" exclusion contained in the COLONY Policy.

-15-

## COUNT III – NO COVERAGE FOR THIRD CAUSE OF

## ACTION OF UNDERLYING ACTION

38.     COLONY realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

39.     In addition to the foregoing allegations in the SAC in the Underlying action, the Third Cause of Action for Breach of Fiduciary Duty in the Underlying Action alleges, in pertinent part, the following against MONTECITO:

> 34.   Plaintiff is informed and believes and thereon alleges that prior to the time that Plaintiff's members took over control and management of the Association, Defendants and each of them appointed their own employees, representative and/or agents, to the directorship and management of Plaintiff, and said Defendants exerted full and complete control over Plaintiff and managed Plaintiff for and on behalf of Plaintiff and its members.  By the control and/or management, Defendants put themselves in relation to Plaintiff and its members in a position of a trustee, requiring them to act in scrupulous good faith and candor to assure that in the business, administration financial planning, budgeting, inspection, conversion, maintenance, repair and/or construction on behalf of Plaintiff, Defendant acted primarily for Plaintiff and its members' benefit and not for their own.  Therefore, Defendants and each of them owed fiduciary duties of loyalty and disclosure to Plaintiff and its future members.

> 35.   Plaintiff is informed and believes and thereon alleges Defendants' fiduciary duties, loyalty and disclosure required that the Defendants faithfully adhere to the servitudes and duties set forth in the Declaration Covenants, Conditions and Restrictions and other governing documents which control Plaintiff and the Plaintiff's Project.

> 36.   Plaintiff is informed and believes and thereon alleges Defendants breached their fiduciary duties of loyalty and disclosure which has proximately caused severe economic detriment and damage to Plaintiff.

> 37.   Plaintiff is informed and believes and thereon alleges Defendants' specific acts which breached their fiduciary

-16-

duties of loyalty and disclosure, which were only recently discovered, include but are not limited to:

a. Defendants intentionally and/or negligently represented to the Department that Defendants would invest in labor, material and services in an amount equivalent to approximately $1.1 million dollars and ignored the duty and responsibility owed to Plaintiff, and without notice to or authority from the Department, Defendants invested substantially less thus causing financial damages to Plaintiff and its members and creating a financial benefit for themselves;

b. Defendants intentionally and/or negligently concealed from Plaintiff and its members the defects and inadequate repairs as hereinbefore alleged;

c. Defendants negligently and/or knowingly turned the Project over to the Association and its members when the Project was defective (as herein alleged), and said defects were either known or, in the exercise of reasonable diligence, should have been known to Defendant and each of them;

d. Defendants negligent and/or knowingly structured the finances of Plaintiff such that Plaintiff would not have adequate reserves to pay for the maintenance of the Project, and/or correction of the defects herein alleged; and

e. Defendant negligently and/or intentionally manipulated data by which budget for reserves was established; and through the manipulation, caused Plaintiff to be underfunded for actual and foreseeable costs of maintenance, repair and replacement of major components of construction.

38. As a direct and proximate result of the breaches of fiduciary duty owed by Defendants and each of them to Plaintiff and its members, as aforementioned, Plaintiff has suffered damages in an amount precisely unknown but believed to be within the jurisdiction of this Court in that it has been and will hereafter be required to perform investigations and works of repair, restoration and construction to portions of the structures to prevent further damage and to restore the structures to their proper

-17-

> condition and/or will suffer damages in an amount, the full nature and extent of which shall be ascertained according to proof at trial.

40.    The allegations of the Third Cause of Action against MONTECITO do not allege "property damage" caused by an "occurrence."

41.    The allegations of the Third Cause of Action against MONTECITO do not allege "property damage" caused by an "occurrence" that took place during the policy period.

42.    The allegations of the Third Cause of Action against MONTECITO in the Underlying Action's SAC are not within the plain language of the "Limitation of Coverage to Business Description" endorsement to the COLONY Policy.

43.    The allegations of the Third Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "Exclusion – Designated Work" endorsement of the COLONY Policy.

44.    The allegations of the Third Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "owned property" exclusion contained in the COLONY Policy.

45.    The allegations of the Third Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "alienated premises" exclusion contained in the COLONY Policy.

## COUNT IV – NO COVERAGE FOR FOURTH CAUSE OF ACTION OF UNDERLYING ACTION

46.    COLONY realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

47.    In addition to the foregoing allegations in the SAC in the Underlying action, the Fourth Cause of Action for Breach of Declarations of CCRs in the Underlying Action alleges, in pertinent part, the following against MONTECITO:

> 40.    The CC&Rs include provisions that require, among other things, the following:

-18-

a. "Owner," as defined by the CC&Rs, refers to any person(s), including Declarant, holding fee simple interest to a Condominium. (CC&Rs, Article 1, section 1.1.43).

b. The Association is obligated to maintain the Common Property and Improvements (as those terms are defined in the CC&Rs) in a safe and good working order (CC&Rs, Article 4, section 4.72).

c. Any Owner that damages the Common Area shall be responsible to the Association for the repair and costs of repair to the Common Area. (CC&Rs, Article 4, section 4.7.4).

d. The Association is required to establish no fewer than two separate Association Maintenance Funds (Operating and Reserves) into which funds shall be deposited which shall be adequate for ongoing current common expenses and reserves for Improvements which the Board does not expect to perform on an annual or more frequent basis. (Article 7, section 7.2).

41. Plaintiff is informed and believes and thereon alleges that at the time the CC&Rs were recorded, and until the last Unit was sold, Defendant and/or each of them were "Owners" of Units of the Project.

42. Defendant and each of them breached the CC&Rs by damaging the common area and failing to adequately financially plan and budget for common expenses and long term replacement of major components.

43. As a direct and proximate result of the conduct herein alleged, Plaintiff has suffered damages in an amount precisely unknown but believed to be within the jurisdiction of this Court in that it has been and will hereafter be required to perform investigations and works of repair restoration and construction to portions of the structures to prevent further damage and to restore the structures to their proper condition and/or will suffer damages in an amount, the full nature and extent of which shall be ascertained according to proof at trial.

48. The allegations of the Fourth Cause of Action against MONTECITO do not allege "property damage" caused by an "occurrence."

49. The allegations of the Fourth Cause of Action against MONTECITO do not allege

PLAINTIFF COLONY INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY RELIEF

"property damage" caused by an "occurrence" which took place during the policy period.

50.   The allegations of the Fourth Cause of Action against MONTECITO in the in the Underlying Action's SAC are not within the plain language of the "Limitation of Coverage to Business Description" endorsement to the COLONY Policy.

51.   The allegations of the Fourth Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "Exclusion - Designated Work" endorsement of the COLONY Policy.

52.   The allegations of the Fourth Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "owned property" exclusion contained in the COLONY Policy.

53.   The allegations of the Fourth Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "alienated premises" exclusion contained in the COLONY Policy

## COUNT V – NO COVERAGE FOR FIFTH CAUSE OF
## ACTION OF UNDERLYING ACTION

54.   COLONY realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

55.   In addition to the foregoing allegations in the SAC in the Underlying action, the Fifth Cause of Action for Negligent Misrepresentation in the Underlying Action alleges, in pertinent part the following against MONTECITO:

45.   Plaintiff is informed and believes and based thereon alleges that at the time of turning the Association over to the members for its operation, business and management, Defendant represented to Plaintiffs that the Project was free from defects, damages and physical financial deficiencies.   The   details   of   the misrepresentations are set forth in Paragraph 12.6 above.

46.   Plaintiff is informed and believes and based thereon alleges the representations were untrue.

47.   Plaintiff is informed and believes and based thereon alleges Defendants had no reasonable basis to believe the representations

-20-

were true but made the representations to the Plaintiff with disregard for the damages that would be caused to Plaintiff.

48. Plaintiff is informed and believes and based thereon alleges Plaintiff has no reasonable way of discovering the falsity of the representations, and at the time of accepting the representations as true, was unaware of the falsity of the representations and acted in reliance upon the truth of the representations and was justified in relying upon the representations.

49. As a direct and proximate result of the conduct herein alleged, Plaintiff has suffered damages in an amount precisely unknown but believed to be within the jurisdiction of this Court in that it has been and will hereafter be required to perform investigations and works of repair, restoration and construction to portions of the structures to prevent further damage and to restore the structures to their proper condition and/or will suffer damages in an amount, the full nature and extent of which, shall be ascertained according to proof at trial.

56. The allegations of the Fifth Cause of Action against MONTECITO do not allege "property damage" caused by an "occurrence."

57. The allegations of the Fifth Cause of Action against MONTECITO do not allege "property damage" caused by an "occurrence" took place during the policy period.

58. The allegations of the Fifth Cause of Action against MONTECITO in the Underlying Action's SAC are not within the plain language of the "Limitation of Coverage to Business Description" endorsement to the COLONY Policy.

59. The allegations of the Fifth Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "Exclusion - Designated Work" endorsement of the COLONY Policy.

60. The allegations of the Fifth Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "owned property" exclusion contained in the COLONY Policy.

61. The allegations of the Fifth Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "alienated premises" exclusion contained in the COLONY Policy.

-21-

## COUNT VI – NO COVERAGE FOR SIXTH CAUSE OF
## ACTION OF UNDERLYING ACTION

62.    COLONY realleges and incorporates by this reference all preceding paragraphs above, in their entirety, as though fully set forth herein.

63.    In addition to the foregoing allegations in the SAC in the Underlying action, the Sixth Cause of Action for Violation of Civil Code § 1134 in the Underlying Action alleges, in pertinent part, the following against MONTECITO:

> 51.    Defendants failed to make the disclosure required by California Civil Code § 1134 to the buyers of Units in the Country Club Villas Project of all substantial defects or malfunctions in the major systems in the Units and common areas of the premises.

> 52.    Plaintiff has standing to assert the claims of such buyers for damages suffered by them as a result of such failure.

> 53.    Said buyers have been damaged by Defendants' failure to make the necessary disclosure.

64.    The allegations of the Sixth Cause of Action against MONTECITO do not allege "property damage" caused by an "occurrence."

65.    The allegations of the Sixth Cause of Action against MONTECITO do not allege "property damage" caused by an "occurrence" took place during the policy period.

66.    The allegations of the Sixth Cause of Action against MONTECITO in the in the Underlying Action's SAC are not within the plain language of the "Limitation of Coverage to Business Description" endorsement to the COLONY Policy.

67.    The allegations of the Sixth Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "Exclusion - Designated Work" endorsement of the COLONY Policy.

68.    The allegations of the Sixth Cause of Action against MONTECITO in the Underlying Action's SAC are excluded by the "owned property" exclusion contained in the COLONY Policy.

69.    The allegations of the Sixth Cause of Action against MONTECITO in the

-22-

1 │ Underlying Action's SAC are excluded by the "alienated premises" exclusion contained in the

2 │ COLONY Policy.

3 │ **PRAYER**

4 │ WHEREFORE, Plaintiff COLONY prays for judgment against Defendants as follows:

5 │ 1.    That the court declare the rights, obligations and liabilities of the parties herein and,

6 │ in specific declare:

7 │ 2.    That plaintiff COLONY has no duty to provide insurance coverage for the

8 │ Underlying Action filed against MONTECITO under the COLONY Policy;

9 │ 3.    That plaintiff COLONY has no obligation to defend the defendants in MONTECITO

10 │ for the Underlying Action filed against MONTECITO;

11 │ 4.    That plaintiff COLONY has no obligation to indemnify MONTECITO under the

12 │ COLONY Policy for any damages awarded against it in the Underlying Action;

13 │ 5.    That plaintiff COLONY is entitled to reimbursement from MONTECITO for all

14 │ amounts paid by Colony to defend MONTECITO in the Underlying Action;

15 │ 6.    Further, to the extent that COLONY pays any sums in settlement on behalf of

16 │ MONTECITO in the Underlying Action, COLONY seeks reimbursement;

17 │ 7.    For costs of suit;

18 │ 8.    For such other and further relief that this court deems just and proper.

19 │

20 │ DATED: July 23, 2014          LAW OFFICES OF SEMHA ALWAYA, APC

21 │

22 │                               By: _Semha Alwaya_____

23 │                                   SEMHA ALWAYA
                                       Attorney for Plaintiff
                                       COLONY INSURANCE COMPANY

24 │

25 │

26 │

27 │

28 │                                   -23-

1

## DEMAND FOR JURY TRIAL

2    Colony Insurance Company demands a trial by jury.

3

4    DATED: July 23 2014                    LAW OFFICES OF SEMHA ALWAYA, APC

5                                           By: _____
                                                 SEMHA ALWAYA
6                                                Attorney for Plaintiff
                                                 COLONY INSURANCE COMPANY
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF COLONY INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY RELIEF

**EXHIBIT "A"**

03/12/2010 11:21 AM
10/12/2009 03:27 PM

# COMMON POLICY DECLARATIONS



**COLONY INSURANCE COMPANY**
9201 FOREST HILL AVENUE
RICHMOND, VA 23235

POLICY NUMBER
GL183286
RENEWAL OF
NEW
PROGRAM CODE:

*Underwritten by Colony Management Services, Inc.*

1. **NAMED INSURED AND MAILING ADDRESS:**

MONTECITO INVESTMENT
333 1ST STREET NORTH
JACKSONVILLE BEACH, FL 32250

PRODUCER: 24007

WESTROPE & ASSOCIATES
MIDWESTERN GENERAL BROKERAGE D/B/A
801 W. 47TH ST.
SUITE 500
KANSAS CITY, MO 64112

2. **POLICY PERIOD:** From 05/24/2005 to 05/24/2006 12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL OF THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

3. **THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | |

Premium charge for coverage of certified acts of terrorism: $
(Per Policyholder Disclosure TRIA2002Notice-1202 attached.)
**or**
Coverage for certified acts of terrorism has been rejected; exclusion attached. [X]
(Per Policyholder Disclosure TRIA2002Notice-1202 attached.)

ISSUED 07/18/2005 IS

Premium shown is payable at inception.

Total Policy Premium:

Inspection Fee:

4. **FORMS APPLICABLE TO ALL COVERAGES:**

See Form U001 ~ Schedule of Forms and Endorsements

5. **BUSINESS DESCRIPTION:** APARTMENTS

Countersigned: _____
          Date

By: _____
          Authorized representative

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1994

*[Notary seal: KIMBERLY K. LOWRIE, COMMONWEALTH OF VIRGINIA, 366550 (07/02), REGISTRATION NO. 113021, MY COMM. EXPIRES 06/30/2012, NOTARY PUBLIC]*

NOTARY PUBLIC

10-30-2010

My Commission Expires

I hereby certify this to be a true and correct copy.

*Carolyn Ford*

Carolyn Ford-Data Entry Supervisor

03/12/2010 11:21 AM
10/12/2009 03:28 PM

U001 (10/04)

Insured:  MONTECITO INVESTM█NT
Policy Number:  GL183286

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|---|---|
| FORMS APPLICABLE - | COMMON POLICY DECLARATIONS |
| | |
| IL0017-1198 | COMMON POLICY CONDITIONS |
| IL0021-0498 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| IL1201-1185 | POLICY CHANGES |
| U002-0904 | MINIMUM POLICY PREMIUM |
| U094-0702 | SERVICE OF SUIT |
| U184-0702 | INSPECTION |
| ZPJCG-0403 | POLICY JACKET |
| | |
| FORMS APPLICABLE - | COMMERCIAL GENERAL LIABILITY COVERAGE PART |
| | |
| DCJ6553-0702 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| CG0001-1001 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0062-1202 | WAR LIABILITY EXCLUSION |
| CG2135-1001 | EXCLUSION - COVERAGE C - MEDICAL PAYMENTS |
| CG2167-0402 | FUNGI OR BACTERIA EXCLUSION |
| U003A-0702 | HAZARDOUS MATERIALS EXCLUSION |
| U004-0702 | MISCELLANEOUS EXCLUSIONS ENDORSEMENT |
| U046-0904 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT |
| U047-0702 | TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US |
| U048-0904 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| U049-0702 | PRODUCTS/COMPLETED OPERATIONS LIMIT INCLUDED IN THE GENERAL AGGREGATE LIMIT |
| U058-0702 | EMPLOYEE BENEFITS LIABILITY COVERAGE |
| U070-0702 | DEDUCTIBLE LIABILITY INSURANCE |
| U122B-0504 | EXCLUSION-DESIGNATED WORK-RESIDENTIAL NEW CONSTRUCTION |
| U132A-0703 | HIRED AUTO AND NON-OWNED AUTO LIABILITY |
| U155-0702 | ABSOLUTE AUTO, AIRCRAFT AND WATERCRAFT EXCLUSION |
| U156-0702 | ADDITIONAL INSURED-OWNERS, LESSEES OR CONTRACTORS-SCHEDULED PERSON OR ORGANIZATION |
| U159-0702 | LIMITATION OF COVERAGE TO BUSINESS DESCRIPTION |
| UCG2175-0904 | CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION |
| UCG2504-0704 | DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT - RESTRICTED FORM |
| UIL0255-0702 | FLORIDA CHANGES - CANCELLATION AND NONRENEWAL |

03/12/2010 11:21 AM

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

03/12/2010 11:21 AM

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

IL 00 21 04 98

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 2

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997

IL 00 21 04 98

 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number _____

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 05/24/2005 | COLONY INSURANCE COMPANY |
| **NAMED INSURED** | | **AUTHORIZED REPRESENTATIVE** |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

**COVERAGE PARTS AFFECTED**

GENERAL LIABILITY – LOCATION SCHEDULE

**CHANGES**

1. 1220 S MISSOURI AVE., CLEARWATER, FL. 33756 .
2. 6900 EAST PRINCESS DR., PHOENIX, AZ. 85084
3. 1701 EAST COLTER STREET, PHOENIX, AZ. 85016
4. 5400 BENTGRASS DRIVE, SARASOTA, FL. 34235
5. 1090 BELLA VISTA BLVD., ST. AUGUSTINE, FL. 32084
6. 616 CLEARWATER PARK RD., WEST PALM BEACH, FL. 33401
7. 801 UNO LAGO DR., JUNO BEACH, FL. 33408
8. 700 DANIEL ELLIS DR., CHARLESTON, SC 29412
9. 5039 TIMUQUANA RD., JACKSONVILLE, FL. 32210 — *deleted*
10. 4455 E. PARADISE VILLAE PARKWAY S., PHOENIX, AZ. 85032
11. 3751 PINE RIDGE BLVD., PALM HARBOR, FL. 34685
12. 3984 NW GARDENROD ROAD, JENSEN BEACH, FL. 34957
13. 1701 E. COLTER, PHOENIX, AZ. 85016

Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

IL 12 01 11 85

Page 1 of 1

03/12/2010 11:21 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number _____

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 05/24/2005 | COLONY INSURANCE COMPANY |
| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

GENERAL LIABILITY – U047-0702 - BLANKET

## CHANGES

IT IS HEREBY AGREED THAT COVERAGE FORM U047-0702 IS BLANKET WHERE
REQUIRED BY WRITTEN CONTRACT WITH THE NAMED INSURED.

Authorized Representative Signature

IL 12 01 11 85

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Page 1 of 1

03/12/2010 11:21 AM
10/12/2009 03:28 PM

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number _____

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 05/24/2005 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

GENERAL LIABILITY – NAMED INSURED

CHANGES

MONTECITO RENAISSANCE LLLP
MONTECITO BACARO,  LLLP
MONTECITO CAMELBACK, LLLP
MONTECITO TRAVININ, LLLP
BELLA VISTA ON THE INTRACOASTAL LLLP
MONTECITO MARK,  LLLP
UNO LAGO MONTECITO,  LLLP
MONTECITO ENCLAVE, LLLP
THE VENETIAN ON THE ORTEGA, LLLP
MONTECITO STONECREEK, LLLP
MONTECITO ESSEX, LLLP
MONTECITO ST. ANDREWS, LLC
MONTECITO CAMELBACK LLLC

Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

Page 1 of 2

03/12/2010 11:21 AM
10/12/2009 03:28 PM

2 01 11 85

Copyright, Insurance Services Office, Inc.,   1983
Copyright, ISO Commercial Risk Services, Inc.,   1983

03/12/2010 11:21 AM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINIMUM POLICY PREMIUM

The following additional policy Conditions supersede any other policy conditions as regards the "minimum earned premium" for this policy:

**Minimum Earned Premium**

This policy is subject to a "minimum earned premium".  "Minimum earned premium" means the premium that is calculated as follows:

1.  The total policy premium as shown in the policy Declarations, plus

2.  Any premium adjustment by endorsements, plus

3.  Any additional premium developed by audit.

**Audits and Minimum Earned Premium**

Audits will not reduce the "minimum earned premium". The due date for audit premiums is the date shown as the due date on the bill.

**Cancellation and Minimum Earned Premium**

1.  If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than 25% of the "minimum earned premium".

2.  If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply. We will return to you the pro rata amount of the unearned premium.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U002-0904

**03/12/2010 11:21 AM**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
   Colony Insurance Company,
   Colony National Insurance Company, or
   Colony Specialty Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Page 1 of 1

U094-0702

03/12/2010 11:21 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# INSPECTION

This endorsement modifies the policy as follows:

██████ is added to this policy for an inspection and is not refundable.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U184-0702

Page 1 of 1

03/12/2010 11:21 AM



9201 Forest Hill Avenue
Suite 200
Richmond, VA 23235

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary as duly authorized representatives of the Company.

**PRESIDENT**                    **SECRETARY**

Colony Insurance Company   Colony National Insurance Company   Colony Specialty Insurance Company
Members of Argonaut

ZP-JCG 04/03

03/12/2010 11:21 AM
10/12/2009 03:28 PM

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

This coverage part consists of this Declarations form, the Common Policy Conditions, the Commercial General Liability Coverage Form and the endorsements indicated as applicable.

POLICY NO.    GL183286
NAMED INSURED:   MONTECITO INVESTMENT

## LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products – Completed Operations) | $2,000,000.00 |
| Products Completed Operations Aggregate Limit | included |
| Personal & Advertising Injury Limit | $1,000,000.00 |
| Each Occurrence Limit | $1,000,000.00 |
| Damage To Premises Rented To You Limit | $100,000.00   Any One |
| Premises | |
| Medical Expense Limit | excluded Any One Person |

**RETROACTIVE DATE** (CG 00 02 only) – Coverage A of this insurance does not apply to "bodily injury" or "Property damage" which occurs before Retroactive Date, if any, shown below.

Retroactive Date:                    (Enter Date or "None" if no Retroactive Date Applies)

Location of All Premises You Own, Rent or Occupy (Same as Item 1 unless shown below):

SEE IL1201-1185

| CLASSIFICATION | CODE NO. | PREMIUM BASIS | RATE | ADVANCE PREMIUM PR / CO | ADVANCE PREMIUM ALL OTHER |
|---|---|---|---|---|---|
| NON-OWNED & HIRED AUTO | 334-11115 | ▓▓▓▓ | ▓▓ | | ▓▓▓▓ |
| ADDITIONAL INSURED | 334-22201 | ▓▓▓▓ | ▓▓ | | ▓▓▓ |
| EMPLOYEE BENEFITS LIABILITY | 334-22202 | ▓▓▓▓ | ▓▓ | | ▓▓▓ |
| WAIVER OF SUBROGATION | 334-22205 | ▓▓▓▓ | ▓▓ | | ▓▓▓ |
| DESIG LOC(S) GEN AGG LIM - RESTRICTED FORM | 334-44444 | ▓▓▓▓ | | | ▓▓▓ |
| SWIMMING POOLS INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS | 334-48925 | ▓▓▓▓ | | | ▓▓▓▓ |
| APARTMENT BUILDINGS | 334-60010 | ▓▓▓▓ | | | INCLUDED |
| CONDOMINIUMS - RESIDENTIAL | 334-62003 | ▓▓▓▓ | ▓▓ | | ▓▓▓ |
| DOCKS/SLIPS | 334-44444 | ▓▓▓ | | | |

**FORMS / ENDORSEMENTS APPLICABLE:**
SEE FORM U001 - SCHEDULE OF FORMS AND ENDORSEMENTS

| TOTAL PREMIUM FOR THIS COVERAGE PART | ▓▓▓▓ |
|---|---|

**FORM OF BUSINESS:** CORPORATION
     Audit Period: Annual unless otherwise stated:

DCJ6553 (07-02)

Includes copyrighted material of Insurance Services Office, Inc. with its permission,
Copyright, Insurance Services Office, Inc., 1984

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000 CG 00 01 10 01 □

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**03/12/2010 11:21 AM**

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© ISO Properties, Inc.,  2000  CG 00 01 10 01

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  © ISO Properties, Inc., 2000

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

© ISO Properties, Inc.,  2000

CG 00 01 10 01            □

03/12/2010 11:21 AM

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      **(1)** "Bodily injury" or "personal and advertising injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         **(d)** Arising out of his or her providing or failing to provide professional health care services.

      **(2)** "Property damage" to property:

         **(a)** Owned, occupied or used by,

         **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

---

CG 00 01 10 01                © ISO Properties, Inc., 2000                Page 9 of 16        □

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense:

        © ISO Properties, Inc., 2000        CG 00 01 10 01        □

**b.** If a claim is made or "suit" is brought against any insured, you must:

  **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

  **(2)** Notify us as soon as practicable.

  You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

  **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  **(2)** Authorize us to obtain records and other information;

  **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

  **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

  **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

  **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000                 □

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

CG 00 01 10 01          □

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

© ISO Properties, Inc., 2000

b. Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

a. Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000

CG 00 01 10 01 ☐

03/12/2010 11:22 AM
10/12/2009 03:28 PM



COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion i. under Paragraph 2., **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph 2., **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

a. War, including undeclared or civil war; or

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph 2., **Exclusions of Section I – Coverage C – Medical Payments** does not apply.  Medical payments due to war are now subject to Exclusion **g.** of Paragraph 2., **Exclusions of Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage A.

© ISO Properties, Inc., 2002

COMMERCIAL GENERAL LIABILITY
CG 21 35 10 01

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Description And Location Of Premises Or Classification: |
|---|
|  |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply; and

2. The following is added to Section I – Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

CG 21 35 10 01 © ISO Properties, Inc., 2000 Page 1 of 1

03/12/2010 11:22 AM

COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f. and SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, n. and m.** are replaced by the following:

This insurance does not apply to:

**Hazardous Materials**

(1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of  "hazardous materials".

(3) Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials".

(4) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs (1), (2), or (3) above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

However, this exclusion does not apply to:

(1) "Bodily injury" or "property damage" caused by or resulting from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" that is caused by the heat, smoke or fumes from a "hostile fire":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; or

(b) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor;

(2) "Bodily injury" caused by or resulting from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

B. **SECTION V – DEFINITIONS** is amended and the following added:

"Hazardous materials" means "pollutants", lead, asbestos, silica and materials containing them.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

03/12/2010 11:22 AM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MISCELLANEOUS EXCLUSIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following is added:

### EXCLUSION - INTERCOMPANY PRODUCTS SUITS

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of or resulting from "your products" and included within the "products-completed operations hazard".

B. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following are added:

### USL&H, JONES ACT and MARITIME EXCLUSION

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

(1) operations over navigable waters or offshore including but not limited to drilling and production platforms, pipelines, and vessels; or

(2) direct or indirect actions including but not limited to subrogation involving U.S. Longshore & Harbor Workers Compensation Act (USL&H), Merchant Marine Act ("Jones Act") or other maritime laws and any amendments to those laws.

### EXCLUSION - PROFESSIONAL SERVICES

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from the rendering or failure to render any "professional service" except by endorsement to this policy and then only to the extent of such endorsement.

"Professional service" means:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Engineering services, including related supervisory or inspection services;

(4) Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

(5) Any health or therapeutic service, treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing or tattooing services including but not limited to the insertion of pigment, collagen or any other foreign substance into or under the skin;

(9) Services in the practice of pharmacy;

(10) Law enforcement or firefighting services; and

(11) Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U004-0702

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

| SCHEDULE OF PREMISES OR PROJECTS: |
| --- |
| SEE IL1201-1185 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of or resulting from:

(1)  The ownership, maintenance or use of the premises shown in the Schedule; or

(2)  The project shown in the Schedule.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 8. Transfer of Rights Of Recovery Against Others To Us is amended and the following added:

We waive any rights of recovery we may have against any person or organization because of payments we make for "bodily injury" or "property damage" caused by or resulting from your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard" if:

a.    you agreed to such waiver; and

b.    the waiver is included as part of a written construction contract or lease; and

c.    such written contract or lease was entered into prior to any claim to which this insurance applies.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U047-0702

Includes copyrighted material of ISO Properties, Inc., with its permission.

Page 1 of 1

03/12/2010 11:22 AM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

This insurance does not apply to:

**Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, battery, discrimination or abuse including sexual abuse directed at any person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Includes copyrighted material of ISO Properties, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PRODUCTS/COMPLETED OPERATIONS LIMIT INCLUDED IN THE GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION III – LIMITS OF INSURANCE, 3.** is amended and the following added:

The Products-Completed Operation Aggregate Limit does not apply to damages caused by any products or operations that our premium rating classification states the products-completed operations:

**a.** is included; or

**b.** is not otherwise separately rated for products-completed operations; or

**c.** is not included within the "products-completed operations hazard" definition.

Damages from these products or operations under **COVERAGE A** shall be subject to the General Aggregate Limit as described in **b.** above.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U049-0702

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS – MADE AND REPORTED COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible Each Claim |
|---|---|---|---|
| | $1,000,000 | Each Claim | $1,000. |
| "Employee Benefits Programs" | $1,000,000 | Aggregate | |

Retroactive Date:  04/24/2005

**A.** The following is added to **SECTION I – COVERAGES:**

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1.** **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Paragraph E. (SECTION III – LIMITS OF INSURANCE); and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements and SUPPLEMENTARY PAYMENTS.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to damages only if:

(1) The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

(2) The act, error or omission, did not take place before the Retroactive Date shown in the Schedule nor after the end of the policy period; and

(3) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, and reported to us during the policy period or an Extended Reporting Period we provide under Paragraph G. of this endorsement.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

(1) When notice of such "claim" is received and recorded by us, whichever comes first; or

(2) When we make settlement in accordance with Paragraph **1.a.** above.

Includes copyrighted material of ISO Properties, Inc.,  2000
with its permission.

U058-0702

A "claim" received and recorded by the us within 30 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d.  All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2.  **Exclusions**

This insurance does not apply to:

a.  **Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b.  **Bodily Injury, Property Damage, Personal Injury or Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

c.  **Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

d.  **Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e.  **Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

(1)  Failure of any investment to perform;

(2)  Errors in providing information on past performance of investment vehicles; or

(3)  Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f.  **Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g.  **ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h.  **Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i.  **Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

Includes copyrighted material of ISO Properties, Inc., 2000 with its permission



   j.  **Employment-Related Practices**
       Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

B.  For the purposes of the coverage provided by this endorsement Supplementary Payments – Coverages A and B is replaced by the following:

**SUPPLEMENTARY PAYMENTS – COVERAGES A, B and Employee Benefits Liability**

We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend:

1.  All expenses we incur.

2.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

3.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

4.  All costs taxed against the insured in the "suit".

5.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

6.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will reduce the limits of insurance.

C.  For the purposes of the coverage provided by this endorsement, Paragraph 2. of SECTION II – WHO IS AN INSURED is replaced by the following:

2.  Each of the following is also an insured:

    a.  Each of your "employees" who is or was authorized to administer your "employee benefit program".

    b.  Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

    c.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

D.  For the purposes of the coverage provided by this endorsement, Paragraphs 3. and 4. of SECTION II – WHO IS AN INSURED do not apply.

E.  For the purposes of the coverage provided by this endorsement, SECTION III – LIMITS OF INSURANCE is replaced by the following:

1.  **Limits Of Insurance**

    a.  The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

        (1)  Insureds;

        (2)  "Claims" made or "suits" brought;

        (3)  Persons or organizations making "claims" or bringing "suits";

        (4)  Acts, errors or omissions; or

U058-0702          Includes copyrighted material of ISO Properties, Inc., 2000          Page 3 of 7
                                    with its permission.

(5)   Benefits included in your "employee benefit program".

b.   The Aggregate Limit is the most we will pay for all damages, including SUPPLEMENTARY PAYMENTS, because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program". This Aggregate Limit of Insurance is part of and not in addition to the policy General Aggregate Limit of Insurance shown in the Declarations of the policy.

c.   Subject to the Aggregate Limit, the Each Claim Limit is the most we will pay for any one "claim" for all damages sustained by any one or more "employees", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

(1)   An act, error or omission; or

(2)   A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

All "claims" for damages made by one or more "employees" because of any one act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to be one "claim".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Payments under these Limits of Insurance are part of and erode the policy General Aggregate Limit of Insurance shown in the Declarations.

2.   **Deductible**

Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Claim. The limits of insurance shall not be reduced by the amount of this deductible.

a.   The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

b.   The terms of this insurance, including those with respect to:

(1)   Our right and duty to defend any "suits" seeking those damages; and

(2)   Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

c.   We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

F.   For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of SECTION IV – CONDITIONS are replaced by the following:



2. **Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

  a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

    (1) What the act, error or omission was and when it occurred; and

    (2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

  b. If a "claim" is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

    (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

  c. You and any other involved insured must:

    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

    (2) Authorize us to obtain records and other information;

    (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

    (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

  d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4. **Other Insurance**

  This insurance is excess over any other valid and collectible insurance that is available to the insured for a loss we cover under this endorsement.

G. For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if this endorsement is canceled or not renewed.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of one (1) year is available, but only by an endorsement and for an extra charge.

  You must give us a written request for the endorsement within 30 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

  We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

  a. The "employee benefit programs" insured;

  b. Previous types and amounts of insurance;

03/12/2010 11:22 AM
10/12/2009 03:28 PM

c. Limits of insurance available under this endorsement for future payment of damages; and

d. Other related factors.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be the dollar amount of the Limits of Insurance not exhausted by payments of judgements, settlements and SUPPLEMENTARY PAYMENTS under this coverage, and shown in the Schedule of this endorsement under Limits of Insurance, subject to the available policy General Aggregate Limit of Insurance not exhausted by the payment of judgements, settlements and SUPPLEMENTARY PAYMENTS under the policy.

Paragraph E.1.b. of this endorsement will be amended accordingly. The Each Employee Limit shown in the Declarations will then continue to apply as set forth in Paragraph E.1.c.

H. For the purposes of the coverage provided by this endorsement, the following definitions are added to the **DEFINITIONS** Section:

1. "Administration" means:

   a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   b. Handling records in connection with the "employee benefit program"; or

   c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any written demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and



03/12/2010 11:22 AM
10/12/2009 03:28 PM

e.   Any other similar benefits designated in the Schedule or added thereto by endorsement.

I.  For the purposes of the coverage provided by this endorsement, Definitions **5.** and **16.** in the Definitions Section are replaced by the following:

**5.**  "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**16.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

a.   An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount and Basis of Deductible | | |
|---|---|---|---|
| | PER CLAIM | or | PER OCCURRENCE |
| Bodily Injury Liability | $ | | $ |
| OR | | | |
| Property Damage Liability | $ | | $ |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ 5,000. | | $ |

A.  Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B.  You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined; or

   d. Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

U070-0702

Includes copyrighted material of ISO Properties, Inc., with its permission.

Page 1 of 2

03/12/2010 11:22 AM
10/12/2009 03:28 PM

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages because of "property damage";

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

   (1) "Bodily injury";

   (2) "Property damage"; or

   (3) "Bodily injury" and "property damage" combined; or

d. Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We, at our sole election and option, may either:

   1. Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us; or

   2. Simultaneously upon receipt of notice of any claim or at any time thereafter, request you pay or deposit with us all or any part of the deductible amount, to be held and applied by us as herein provided.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**03/12/2010 11:22 AM**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - DESIGNATED WORK - RESIDENTIAL NEW CONSTRUCTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

**Residential New Construction Work**

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of or resulting from "your work" performed on new single or multiple family housing, apartment, townhouse or condominium projects.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U122B-0504

Page 1 of 1

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT ●ANGES THE POLICY. PLEASE ●●D IT CAREFULLY.

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

| Coverage | Limits of Insurance | | Additional Premium |
|---|---|---|---|
| Hired Auto Liability | $1,000,000 | Each Occurrence Limit | $ INCLUDED |
| Non-Owned Auto Liability | $1,000,000 | Each Occurrence Limit | $ INCLUDED |
| | $1,000,000 | Aggregate Limit | |

A.  Insurance is provided only for those coverages for which a specific premium charge is shown in the Declarations or in this Schedule.

   1.  **HIRED AUTO LIABILITY**

      The insurance provided under the Commercial General Liability Form, **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

   2.  **NON-OWNED AUTO LIABILITY**

      The insurance provided under the Commercial General Liability Form, **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

B.  For insurance provided by this endorsement only:

   1.  The exclusions, under the Commercial General Liability Form, **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, e.** and **j.** are deleted and replaced by the following:

      e.  "Bodily injury" to:

         (1)  An "employee" of the insured arising out of and in the course of:

            (a)  Employment by the insured; or

            (b)  Performing duties related to the conduct of the insured's business; or

         (2)  The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

      This exclusion applies:

         (1)  Whether the insured may be liable as an employer or in any other capacity; and

         (2)  To any obligation to share damages with or repay someone else who must pay damages because of injury.

      This exclusion does not apply to:

         (1)  Liability assumed by the insured under an "insured contract"; or

         (2)  "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers compensation law.

      j.  "Property damage" to:

         (1)  Property owned or being transported by, or rented or loaned to the insured; or

         (2)  Property in the care, custody or control of the insured,

03/12/2010 11:22 AM
10/12/2009 03:28 PM



2. **SECTION II – WHO IS AN INSURED** in the Commercial General Liability Form, is replaced by the following:

Each of the following is an insured under this endorsement to the extent set forth below:

a. You;

b. Any other person using a "hired auto" with your permission;

c. For a "non-owned auto", any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business; and

d. Any other person or organization, but only for their liability because of acts or omissions of an insured under a., b. or c. above.

None of the following is an insured:

(1) Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

(2) Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

(3) Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

(4) The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee;

(5) Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

C. **SECTION III - LIMITS OF INSURANCE** is amended and the following added:

Regardless of the number of "hired autos", "non-owned autos", insureds, premiums paid, claims made or vehicles involved in the "occurrence", the most we will pay for all damages resulting from any one "occurrence" is the applicable limit shown in the Schedule of this endorsement or in the Declarations.

The Aggregate Limit is the most, subject to the Each Occurrence Limit, we will pay as damages for "bodily injury" or "property damage" sustained and expenses incurred in the defense and adjustment of all claims and "suits" regardless of how many persons assert claims or "suits" against you.

The Each Occurrence and Aggregate Limits described above are the most we will pay regardless of the number of insureds. These Limits of Insurance are subject to and not in addition to the General Aggregate Limit shown in the Declarations of the policy. Payments under these Limits of Insurance are part of and erode the policy General Aggregate Limit of Insurance shown in the Declarations.

D. The following additional definitions apply:

1. "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

2. "Hired Auto" means any "auto" you lease, hire or borrow. This does not include any "auto" you lease, hire or borrow from any of your "employees" or members of their households, or from any partner or "executive officer" of yours.

3. "Non-Owned Auto" means any "auto" you do not own, lease, hire or borrow which is used in connection with your business. However, if you are a partnership, a "non-owned auto" does not include any "auto" owned by any partner.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ABSOLUTE
# AUTO, AIRCRAFT AND WATERCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, paragraph **g.** is deleted and replaced with the following:

  **g. Aircraft, Auto Or Watercraft**

  "Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading".

  This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

B. **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance**, paragraph **b. Excess Insurance**, subparagraph **(1)(d)** is deleted.

  ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED –
# OWNERS, LESSEES OR CONTRACTORS –
# SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization (Additional Insured):**

BLANKET WHERE REQUIRED BY WRITTEN
CONTRACT WITH THE NAMED INSURED.

A. **SECTION II – WHO IS AN INSURED** is amended and the following added:

The person or organization (called "additional insured") shown in the Schedule is also an insured but only:

a. with respect to indirect liability caused by or resulting from your ongoing operations performed for that "additional insured(s)"; and

b. when you and the person or organization shown in the Schedule have agreed in writing in a contract or agreement that such person or organization be added as an "additional insured" on your policy.

A person's or organization's status as an "additional insured" under this endorsement ends when their contract or agreement with you ends.

B. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

This insurance does not apply to:

**Additional Insured Contractual Liability**

"Bodily injury" or "property damage" for which the "additional insured(s)" are obligated to pay damages by reason of the assumption of liability in a contract or agreement.

**Finished Operations or Work**

"Bodily injury" or "property damage":

(1) occurring after "your work", including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the "additional insured(s)" at the site of the covered operations has been completed; or

(2) occurring after that portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization.

**Negligence of Additional Insured**

"Bodily injury" or "property damage" directly arising out of or resulting from the negligence of the "additional insured(s)".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U156-0702

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MISCELLANEOUS EXCLUSIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following is added:

### EXCLUSION - INTERCOMPANY PRODUCTS SUITS

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of or resulting from "your products" and included within the "products-completed operations hazard".

B. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following is added:

### USL&H, JONES ACT and MARITIME EXCLUSION

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

**(1)** operations over navigable waters or offshore including but not limited to drilling and production platforms, pipelines, and vessels; or

**(2)** direct or indirect actions including but not limited to subrogation involving U.S. Longshore & Harbor Workers Compensation Act (USL&H), Merchant Marine Act ("Jones Act") or other maritime laws and any amendments to those laws.

### EXCLUSION - PROFESSIONAL SERVICES

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from the rendering or failure to render any "professional service" except by endorsement to this policy and then only to the extent of such endorsement.

"Professional service" means:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Engineering services, including related supervisory or inspection services;

**(4)** Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

**(5)** Any health or therapeutic service, treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing or tattooing services including but not limited to the insertion of pigment, collagen or any other foreign substance into or under the skin;

**(9)** Services in the practice of pharmacy;

**(10)** Law enforcement or firefighting services; and

**(11)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE
# TO
# BUSINESS DESCRIPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

BUSINESS DESCRIPTION:

60010 - APARTMENT BUILDINGS

62003 - CONDOMINIUMS – RESIDENTIAL – (ASSOCIATION RISK ONLY)

48925 - SWIMMING POOLS

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

   **(4)** The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.

B. **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

This insurance applies to "personal and advertising injury" caused by an offense in the course of the business described in the Schedule.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.


U159-0702

Page 1 of 1

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT ●ANGES THE POLICY.  PLEASE ●●D IT CAREFULLY.

# CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

A. The following exclusion is added:

This insurance does not apply to:

TERRORISM AND PUNITIVE DAMAGES

"Any injury or damage" arising, directly or indirectly, out of:

(1) "Certified acts of terrorism" or "other acts of terrorism", including any action taken in hindering or defending against an actual or expected incident of "certified acts of terrorism" or "other acts of terrorism"; or

(2) Any act of terrorism:

(a) that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(b) that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

(c) in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage in (1) or (2) above; including

(3) Damages arising, directly or indirectly, out of (1) or (2) above that are awarded as punitive damages.

B. Exclusion h. under Paragraph 2. Exclusions of SECTION I – COVERAGE C MEDICAL PAYMENTS does not apply.

C. The following definitions are added to the DEFINITIONS Section:

For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

a. The act resulted in aggregate losses in excess of $5 million; and

UCG2175-0904      Contains material © ISO Properties, Inc., 2002 with its permission.      Page 1 of 2

03/12/2010 11:22 AM
10/12/2009 03:28 PM



   b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

D.  In the event of an act of terrorism, a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

03/12/2010 11:22 AM
10/12/2009 03:28 PM



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT- RESTRICTED FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Designated Location(s): |
| --- |
| SEE IL1201-1185 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to operations at a single designated "location" shown in the Schedule above:

  1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

  2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

     a. Insureds;

     b. Claims made or "suits" brought; or

     c. Persons or organizations making claims or bringing "suits".

  3. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

  4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

  5. The most we will pay for the sum of all Designated Location Aggregate Limits combined and to which this insurance applies is $10,000,000.

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

03/12/2010 11:22 AM
10/12/2009 03:28 PM

1. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

C.   When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

D.   For the purposes of this endorsement, the **Definitions** Section is amended by the addition of the following definition:
"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

E.   The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Contains material Copyright, Insurance Services Office, Inc., 1996
with its permission.                    UCG2504-0704

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES –
## CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

OUTPUT POLICY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY POLICY
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraph 2. of the **Cancellation Common Policy Condition** is replaced by the following:

   2. **Cancellation For Policies In Effect 90 Days Or Less**

      a. If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, at least:

         (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

         (2) 20 days before the effective date of cancellation if we cancel for any other reason.

B. The following is added to the **Cancellation Common Policy Condition**:

   7. **Cancellation For Policies In Effect For More Than 90 Days**

      a. If this policy has been in effect for more than 90 days, we will mail or deliver to the first Named Insured written notice of cancellation, at least:

         (1) 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

         (2) 45 days before the effective date of cancellation for any other reason.

C. The following is added:

   **NONRENEWAL**

   1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days prior to the expiration of the policy.

   2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

UIL0255-0702      Contains material copyright, Insurance Services Office, Inc., 1999      Page 1 of 1
with its permission.

03/12/2010 11:22 AM
10/12/2009 03:28 PM



*Colony Insurance Company*
*Colony National Insurance Company*
*Colony Specialty Insurance Company*

# PRIVACY NOTICE

Privacy is important to us. We understand that consumers really care about their privacy and want it to be protected. We are committed to safeguarding nonpublic personal information we collect about our consumers.

We treat personal information carefully and take steps to assure that it remains private. We allow only authorized employees to have access to personal information. We maintain physical, electronic and procedural security protections to safeguard the information in our records.

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use personal information from consumers on applications or other forms; from our transactions with consumers, such as payment and claims history; and from third parties, such as credit reports, driving and medical records, and claims history.

Except as required or permitted by law, we do not share personal information outside our company without obtaining the consumer's permission.

Keeping consumer information accurate and up to date is important to us. Consumers may see and request correction of personal information about them in our files, or contact us with questions about our privacy policy by writing to Gail Kimpfler, Privacy Coordinator, Colony Group, PO Box 85122, Richmond, Virginia 23285.

03/12/2010 11:22 AM
10/12/2009 03:28 PM

# POLICYHOLDER DISCLOSURE
## NOTICE OF INSURANCE COVERAGE FOR CERTIFIED ACTS OF TERRORISM

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States: to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your policy may be affected as follows:

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

You should also know that your policy does <u>not</u> provide coverage for acts of terrorism that are not certified by the Secretary of the Treasury.

### Election or Rejection of Certified Terrorism Insurance Coverage

You must elect or reject this coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of the Act, before the effective date of this policy. <u>Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.</u>

☐ **Coverage election.**
I hereby elect to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act for a prospective annual premium of  $ _____ . I understand that I will not have coverage for losses arising from any non-certified acts of terrorism.

OR

☒ **Coverage rejection.**
I hereby elect **not** to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act. I understand that I will not have coverage for any losses arising from certified or non-certified acts of terrorism.

| | |
|---|---|
| Signature On File | COLONY INSURANCE COMPANY |
| **Policyholder/Applicant's Signature-** <br> Must be person authorized to sign for all insureds. | **Insurance Company** |
| On File | GL183286 |
| **Print Name** | **Policy Number** |
| MONTECITO INVESTMENT | On File |
| **Named Insured** | **Submission Number** |
| On File | 24007 |
| **Date** | **Producer Number** |
| | WESTROPE & ASSOCIATES |
| | **Producer Name** |
| | 801 W. 47TH ST. |
| | **Street Address** |
| | KANSAS CITY, MO 64112 |
| | **City, State, Zip** |

**The producer shown above is the wholesale insurance broker your insurance agent used to place your insurance coverage with us. Please discuss this Disclosure with your agent before signing.**



03/12/2010 11:22 AM
10/12/2009 03:28 PM

 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___ 3:

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 12-15-05 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ████, IT IS HEREBY UNDERSTOOD AND
AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

9253 REGENTS ROAD
LA JOLLA, CA 92037
NAMED INSURED: REGENTS LA JOLLA

CLASS CODE: 60010
PREMIUM BASIS: 574 (UNITS)
RATE: 46.0

CLASS CODE: 48925
PREMIUM BASIS: 2 (EACH)
RATE: 650.0

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/22/2006  SJG

_____
Authorized Representative

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,  1983
                        Copyright, ISO Commercial Risk Services, Inc.,  1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM

 

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___32___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 12/14/05 | COLONY INSURANCE COMPANY |
| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF A RETURN PREMIUM OF ███████, IT IS HEREBY UNDERSTOOD AND AGREED
THAT POLICY CHANGE NUMBER 22 IS CONSIDERED NULL & VOID.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.



05/22/2006   SJG

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983
Page 1 o'

 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number    31

| POLICY NUMBER<br><br>GL183286 | POLICY CHANGES EFFECTIVE<br><br>09-29-2005 | COMPANY<br><br>COLONY INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br><br>MONTECITO INVESTMENT | | AUTHORIZED REPRESENTATIVE<br><br>WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF <span>▮▮▮▮</span>, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

2011 HIGHWAY 17 NORTH
MT. PLEASANT, SC 29466
NAMED INSURED: PALMETTO PLANTATION

CLASS CODE: 60010
PREMIUM BASIS: 256 (UNITS)
RATE: ▮▮▮▮

CLASS CODE: 48925
PREMIUM BASIS: 1 (EACH)
RATE: ▮▮▮▮

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES AT NO ADDITONAL PREMIUM.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/08/2006/IS

_____
Authorized Representative Signature

IL 12 01 11 85        Copyright, Insurance Services Office, Inc.,  1983        Page 1 of
Copyright, ISO Commercial Risk Services, Inc.,  1983



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number ___30___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 09-29-2005 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

**COVERAGE PARTS AFFECTED**

COMMERCIAL GENERAL LIABILITY

**CHANGES**

IN CONSIDERATION OF A RETURN PREMIUM OF ▇▇▇▇, IT IS HEREBY UNDERSTOOD AND AGREED
THAT POLICY CHANGE NO 17 IS CONSIDERED NULL AND VOID.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.


05/08/2006 /IS

Authorized Representative Signature

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,  1983          Page 1 of
                        Copyright, ISO Commercial Risk Services, Inc.,  1983



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___29___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 04-19-2006 | COLONY INSURANCE COMPANY |
| **NAMED INSURED** | | **AUTHORIZED REPRESENTATIVE** |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ████., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATIONS ARE ADDED TO THE POLICY:

6900 EAST PRINCESS DRIVE
PHOENIX, AZ 85084
NAMED INSURED:  MONTAGE CONDOMINIUMS

1701 EAST COLTER STREET
PHOENIX, AZ 85016
NAMED INSURED:  BILTMORE SQUARE CONDOMINIUM

CLASS CODE: 60010
PREMIUM BASIS: 679 (UNITS)
RATE: ████

CLASS CODE: 48925
PREMIUM BASIS: 5 (EACH)
RATE: ████

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/08/2006/IS

Authorized Representative Signature

IL 12 01 11 85

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number    28

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 03-21-2006 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

**COVERAGE PARTS AFFECTED**

COMMERCIAL GENERAL LIABILITY

**CHANGES**

IN CONSIDERATION OF A RETURN PREMIUM OF ███, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS DELETED FROM THE POLICY:

4455 E. PARADISE VILLAGE PARKWAY S.
PHOENIX, AZ  85032

NAMED INSURED:  VILLAS AT STONE CREEK

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/08/2006 /IS

Authorized Representative Signature

IL 12 01 11 85              Copyright, Insurance Services Office, Inc.,   1983
                             Copyright, ISO Commercial Risk Services, Inc.,   1983

Page 1 of 1

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___27___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 03-18-2006 | COLONY INSURANCE COMPANY |
| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ███., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

9460 E. BECKER LANE
SCOTTSDALE, AZ 85260

NAMED INSURED:  SCOTTSDALE COVE; AVENTURA CONDOMINIUM ASSOCIATION, INC.

CLASS CODE:  60010
PREMIUM BASIS:  316 (UNITS)
RATE: ████

CLASS CODE: 48925
PREMIUM BASIS: 3 (EACH)
RATE: ████

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/08/2006/IS

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

Page 1 o

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___26___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 03/10/06 | COLONY INSURANCE COMPANY |
| **NAMED INSURED** | | **AUTHORIZED REPRESENTATIVE** |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

**COVERAGE PARTS AFFECTED**

COMMERCIAL GENERAL LIABILITY

**CHANGES**

IN CONSIDERATION OF A RETURN PREMIUM OF ██████, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS DELETED FROM THE POLICY IN ITS ENTIRETY:

1220 S. MISSOURI AVE.
CLEARWATER, FL 33756

NAMED INSURED: AVALON AT CLEARWATER CONDO ASSOCIATION

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/03/2006   SJG

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

IL 12 01 11 85                                                    Page 1 of

 

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number ___25___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 01/04/06 | COLONY INSURANCE COMPANY |
| **NAMED INSURED** | | **AUTHORIZED REPRESENTATIVE** |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ▮▮▮▮, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

100 WALDEN PARK DRIVE
SAVANNAH, GA  31410
NAMED INSURED: WALDEN PARK

CLASS CODE:  60010
PREMIUM BASIS:  220 UNITS)
RATE: ▮▮▮▮

CLASS CODE:  48925
PREMIUM BASIS:  2 (EACH)
RATE: ▮▮▮▮

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES AT NO ADDITIONAL PREMIUM.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/03/2006  SJG

Authorized Representative Signature

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,   1983
                        Copyright, ISO Commercial Risk Services, Inc.,   1983

Page 1 of

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___24___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 01/03/06 | COLONY INSURANCE COMPANY |
| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ████, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

480 MARTELLO DRIVE
JAMES ISLAND, SC

NAME INSURED:  MERRIT AT JAMES ISLAND

CLASS CODE:  60010
PREMIUM BASIS:  230 (UNITS)
RATE: ████

CLASS CODE: 48925
PREMIUM BASIS: 1 (EACH)
RATE: ████

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES AT NO ADDITIONAL PREMIUM.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.


05/03/2006  SJG

Authorized Representative Signature

IL 12 01 11 85

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Page 1

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___23___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 06/16/05 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

**COVERAGE PARTS AFFECTED**

COMMERCIAL GENERAL LIABILITY

**CHANGES**

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ⬛⬛⬛., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING THREE LOCATIONS ARE ADDED TO THE POLICY:

5150 TWILIGHT CANYON RD., YORBA LINDA, CA 92887  NAMED INSURED:  CANYONS

30902 CLUBHOUSE DRIVE, LAGUNA NIGUEL, CA 92677  NAMED INSURED:  COUNTRY CLUB VILLAS

19431 RUE DE VALORE, FOOTHILL RANCH, CA 92610  NAMED INSURED:  PROVENCE

CLASS CODE: 60010
PREMIUM BASIS: 916 (UNITS)
RATE: ⬛⬛

CLASS CODE: 48925
PREMIUM BASIS: 5 (EACH)
RATE: ⬛⬛

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES AT NO ADDITIONAL PREMIUM.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/03/2006  SJG

_____
Authorized Representative Signature

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,  1983          Page 1 of ·
Copyright, ISO Commercial Risk Services, Inc., 1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM

 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___22___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 12-14-2005 | COLONY INSURANCE COMPANY |
| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ▇▇▇, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

9253 REGENTS ROAD
LA JOLLA, CA 92037
NAMED INSURED: REGENTS LA JOLLA

CLASS CODE: 60010
PREMIUM BASIS: 574 (UNITS
RATE: ▇▇▇

CLASS CODE: 48925
PREMIUM BASIS: 2 (EACH)
RATE: ▇▇▇

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES AT NO ADDITIONAL PREMIUM

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/02/2006/IS

Authorized Representative Signa

IL 12 01 11 85

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Pag

03/12/2010 11:22 AM
10/12/2009 03:28 PM

 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___21___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 12-14-2005 | COLONY INSURANCE COMPANY |
| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ▓▓▓, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

4644 NORTH 22ND STREET
PHOENIX, AZ 85016
NAMED INSURED: AVIANA @ THE BILTMORE

CLASS CODE: 60010
PREMIUM BASIS: 224 (UNITS)
RATE: ▓▓▓

CLASS CODE: 48925
PREMIUM BASIS: 1 (EACH)
RATE: ▓▓▓

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES AT NO ADDITIONAL PREMIUM.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/02/2006/IS

Authorized Representative Signature

Page 1 of

IL 12 01 11 85          Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM

 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number ___20___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 11-15-2005 | COLONY INSURANCE COMPANY |
| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |
| MONTÉCITO INVESTMENT | | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ▮▮▮▮., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

100 RIVERCHASE BLVD.
BEAUFORT, SC
NAMED INSURED:  THE OAKS AT BROAD RIVER

CLASS CODE:  60010
PREMIUM BASIS:  248 (UNITS)
RATE: ▮▮▮▮

CLASS CODE:  48925
PREMIUM BASIS:  1  (EACH)
RATE: ▮▮▮▮

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES AT NO ADDITIONAL PREMIUM.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/02/2006/IS

Authorized Representative Signatur•

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,  1983          **Page 1**
Copyright, ISO Commercial Risk Services, Inc.,  1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___19___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 10-28-2005 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

**COVERAGE PARTS AFFECTED**

COMMERCIAL GENERAL LIABILITY

**CHANGES**

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ▉▉▉., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

5751 NORTH KOLB ROAD
TUCSON, AZ 85750
NAMED INSURED:  SAN VENTANA

CLASS CODE: 60010
PREMIUM BASIS: 408 (UNITS)
RATE: ▉▉▉

CLASS CODE: 48925
PREMIUM BASIS: 2 (EACH)
RATE: ▉▉▉

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES AT NO ADDITIONAL PREMIUM.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

05/02/2006/IS

Authorized Representative Signature

IL 12 01 11 85                 Copyright, Insurance Services Office, Inc.,  1983                  Page 1 of 1
Copyright, ISO Commercial Risk Services, Inc.,  1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM

 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___18___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 11/01/05 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ████., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

85 KENSINGTON BLVD.
BLUFFTON, SC 29910
NAMED INSURED: WESTBURY PARK

CLASS CODE: 60010
PREMIUM BASIS: 320 (UNITS)
RATE: ████

CLASS CODE: 48925
PREMIUM BASIS: 1 (EACH)
RATE: ████

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES AT NO ADDITIONAL PREMIUM.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

04/24/2006  SJG

Authorized Representative Signatu

IL 12 01 11 85

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Page

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___17___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 9/29/05 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

**COVERAGE PARTS AFFECTED**

COMMERCIAL GENERAL LIABILITY

**CHANGES**

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ▮▮▮▮, IT IS HEREBY UNDERSTOOD AND
AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

2011 HIGHWAY 17 NORTH
MT. PLEASANT, SC 29466
NAMED INSURED: PALMETTO PLANTATION

CLASS CODE: 60010
PREMIUM BASIS: 256 (UNITS)
RATE: ▮▮▮▮

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES AT NO ADDITONAL PREMIUM

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

04/24/2006  SJG

Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,   1983
Copyright, ISO Commercial Risk Services, Inc.,   1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___16___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | VARIOUS | COLONY INSURANCE COMPANY |
| **NAMED INSURED** | | **AUTHORIZED REPRESENTATIVE** |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |
| **COVERAGE PARTS AFFECTED** | | |
| COMMERCIAL GENERAL LIABILITY | | |

**CHANGES**

IN CONSIDERATION OF A RETURN PREMIUM OF ████ IT IS HEREBY UNDERSTOOD AND AGREED THAT RATES FOR ENDORSEMENTS #1 AND ENDORSEMENTS 9 THROUGH 15 ARE AMENDED.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

04/14/2006 - TW

Authorized Representative Signature

03/12/2010 11:22 AM
10/12/2009 03:28 PM

 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___15___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 08/27/05 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

### CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ▓▓▓▓., IT IS HEREBY UNDERSTOOD AND
AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

1114 CAMINO  LA COSTA
AUSTIN, TX  78752
NAMED INSURED: CHELSEA REGENT

CLASS CODE: 60010
PREMIUM BASIS:  235 (UNITS)
RATE: ▓▓▓▓

CLASS CODE: 48925
PREMIUM BASIS: 1 (EACH)
RATE: ▓▓▓▓ .

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

03/31/2008  SJG

Authorized Representative Signatur

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,  1983          Page 1
                        Copyright, ISO Commercial Risk Services, Inc.,  1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number _____14_____

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 08/27/05 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

### CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ███, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

2201 S. LAKESHORE
AUSTIN, TX  78741
NAMED INSURED:  TOWN LAKE

CLASS CODE: 60010
PREMIUM BASIS:  256 (UNITS)
RATE: ███

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

03/31/2006  SJG

Authorized Representative Signatur

IL 12 01 11 85

Copyright, Insurance Services Office, Inc.,   1983
Copyright, ISO Commercial Risk Services, Inc.,   1983

Page

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number    13

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 08/27/05 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ▄▄▄▄., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

1630 RUTLAND
AUSTIN, TX  78758
NAMED INSURED:  CHELSEA VILLAGE

CLASS CODE: 60010
PREMIUM BASIS: 240 (UNITS)
RATE: ▄▄▄▄

CLASS CODE: 48925
PREMIUM BASIS: 2 (EACH)
RATE: ▄▄▄▄

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

03/31/2006 SJG

Authorized Representative Signatu

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,  1983                    Page
                        Copyright, ISO Commercial Risk Services, Inc.,  1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___12___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 08/27/05 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ████., IT IS HEREBY UNDERSTOOD AND
AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

2819 FOSTER
AUSTIN, TX 78757
NAMED INSURED: NORTHCROSS APARTMENTS

CLASS CODE: 60010
PREMIUM BASIS: 236 (UNITS)
RATE: ████

CLASS CODE: 48925
PREMIUM BASIS: 2 (EACH)
RATE: ████

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.


03/31/2006  SJG

Authorized Representative Signatu'

IL 12 01 11 85

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

Page 1

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___11___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 08-02-2005 | COLONY INSURANCE COMPANY |
| **NAMED INSURED** | | **AUTHORIZED REPRESENTATIVE** |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

**COVERAGE PARTS AFFECTED**

COMMERCIAL GENERAL LIABILITY

**CHANGES**

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ████., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

520 SOUTHEAST 5TH AVENUE
FORT LAUDERDALE, FL. 33301
NAMED INSURED: NEW RIVER VILLAGE

CLASS CODE: 60010
PREMIUM BASIS: 240 (UNITS)
RATE: ████

CLASS CODE: 48925
PREMIUM BASIS: 1 (EACH)
RATE: ████

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

02/15/2006/IS

_____
Authorized Representative Signature

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,   1983          Page 1 of
                        Copyright, ISO Commercial Risk Services, Inc.,   1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___10___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 08-08-2005 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

**CHANGES**

IN CONSIDERATION OF A RETURN PREMIUM OF ▮▮▮▮., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS DELETED FROM THE POLICY IN ITS ENTIRETY:

5400 BENTGRASS DR.
SARASOTA, FL. 34235
NAMED INSURED:  LAS PALMAS OF SARASOTA

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

02/15/2006/IS

Authorized Representative Signatur

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,   1983          Page 1
Copyright, ISO Commercial Risk Services, Inc.,   1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___9___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 07-07-2005 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

**COVERAGE PARTS AFFECTED**

COMMERCIAL GENERAL LIABILITY

**CHANGES**

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ████., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS ADDED TO THE POLICY:

15005 MICHELANGELO BLVD.
DELRAY BEACH, FL.
NAMED INSURED:  MURANO OF DELRAY BEACH; MONTECITO MIZNER, LLC

CLASS CODE: 60010
PREMIUM BASIS:  275 (UNITS)
RATE: ████

CLASS CODE: 48925
PREMIUM BASIS:  1 (EACH)
RATE: ████

IT IS FURTHER AGREED THAT FORM UCG2504-0704 APPLIES.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

02/15/2008/IS

Authorized Representative Signatur

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,  1983
                        Copyright, ISO Commercial Risk Services, Inc.,  1983                    Page 1

03/12/2010 11:22 AM
10/12/2009 03:28 PM

 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___8___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 12/15/2005 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF A RETURN PREMIUM OF ███, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS DELETED FROM THE POLICY IN ITS ENTIRETY.

616 CLEARWATER PARK RD.
WEST PALM BEACH, FL 33401
NAMED INSURED: MONTECITO PALM BEACH

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

02/02/2006 - TW

Authorized Representative Signature

IL 12 01 11 85

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Page 1 of

03/12/2010 11:22 AM
10/12/2009 03:28 PM

 

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number     7

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 9/13/2005 | COLONY INSURANCE COMPANY |
| **NAMED INSURED** | | **AUTHORIZED REPRESENTATIVE** |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

**COVERAGE PARTS AFFECTED**

COMMERCIAL GENERAL LIABILITY

**CHANGES**

IN CONSIDERATION OF AN ADDITIONAL PREMIUM OF ⬛, IT IS HEREBY UNDERSTOOD AND AGREED THAT POLICY CHANGE NO. 5 IS CONSIDERED NULL & VOID.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.





02/02/2006 - TW

_____
Authorized Representative Signature

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,  1983          **Page 1 of** ·
                        Copyright, ISO Commercial Risk Services, Inc.,  1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___6___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 9-29-05 | COLONY INSURANCE COMPANY |
| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF NO CHANGE IN PREMIUM, IT IS HEREBY UNDERSTOOD AND AGREED THAT FORM U159-0702, LIMITATION OF COVERAGE TO BUSINESS DESCRIPTION, IS AMENDED PER THE ATTACHED:

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

11/16/2005  SJG

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

Page 1 of 1

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE
# TO
# BUSINESS DESCRIPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

BUSINESS DESCRIPTION:  60010 - APARTMENT BUILDINGS

62003 - CONDOMINIUMS – RESIDENTIAL – (ASSOCIATION RISK ONLY)

48925 - SWIMMING POOLS

SITE INSPECTIONS FOR PURPOSES OF INSPECTION FOR ACQUISITION PURPOSES.

A. SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b. is amended and the following added:

(4) The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.

B. SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 1. Insuring Agreement, b. is amended and the following added:

This insurance applies to "personal and advertising injury" caused by an offense in the course of the business described in the Schedule.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U159-0702

Page 1 of 1

03/12/2010 11:22 AM
10/12/2009 03:28 PM

 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change Number _____5_____

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 9-13-05 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF A RETURN PREMIUM OF ████., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS DELETED FROM THE POLICY IN ITS ENTIRETY:

THE VENETIAN
5039 TIMUQUANA RD.
JACKSONVILLE, FL 32210

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

11/16/2005  SJG

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Page 1 of 1

IL 12 01 11 85

03/12/2010 11:22 AM
10/12/2009 03:28 PM

 

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___4___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 05-24-2005 | COLONY INSURANCE COMPANY |
| NAMED INSURED | | AUTHORIZED REPRESENTATIVE |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |
| COVERAGE PARTS AFFECTED | | |
| COMMERCIAL GENERAL LIABILITY | | |

### CHANGES

IN CONSIDERATION OF NO CHANGE IN PREMIUM, IT IS HEREBY UNDERSTOOD AND AGREED THAT FORM U070-0702, DEDUCTIBLE LIABILITY INSURANCE IS AMENDED PER THE ATTACHED.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

09/09/2005/IS

_____
Authorized Representative Signature

IL 12 01 11 85     Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Page 1 of 1

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM    or | PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $5,000. |

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined; or

   d. Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

03/12/2010 11:22 AM
10/12/2009 03:28 PM



  a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

  b. Under Property Damage Liability Coverage, to all damages because of "property damage";

  c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

     (1) "Bodily injury";

     (2) "Property damage"; or

     (3) "Bodily injury" and "property damage" combined; or

  d. Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

  as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

  1. Our right and duty to defend the insured against any "suits" seeking those damages; and

  2. Your duties in the event of an "occurrence", claim, or "suit"

  apply irrespective of the application of the deductible amount.

D. We, at our sole election and option, may either:

  1. Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us; or

  2. Simultaneously upon receipt of notice of any claim or at any time thereafter, request you pay or deposit with us all or any part of the deductible amount, to be held and applied by us as herein provided.

  ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

03/12/2010 11:22 AM
10/12/2009 03:28 PM

  

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___3___

| POLICY NUMBER<br><br>GL183286 | POLICY CHANGES EFFECTIVE<br><br>07/14/05 | COMPANY<br><br>COLONY INSURANCE COMPANY |
|---|---|---|
| NAMED INSURED<br><br>MONTECITO INVESTMENT | | AUTHORIZED REPRESENTATIVE<br><br>WESTROPE & ASSOCIATES |
| COVERAGE PARTS AFFECTED<br><br>COMMERCIAL GENERAL LIABILITY | | |

CHANGES

IN CONSIDERATION OF A RETURN PREMIUM OF ▬▬▬, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS DELETED FROM THE POLICY IN ITS ENTIRETY;

801 UNO LAGO DRIVE
JUNO BEACH, FL 33408

NAMED INSURED: UNO LAGO MONTECITO, LLLP
OCEAN TRACE

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

08/31/2005   SJG

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

IL 12 01 11 85

Page 1 of 1

03/12/2010 11:22 AM
10/12/2009 03:28 PM

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___2___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 08/02/05 | COLONY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| MONTECITO INVESTMENT | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

### CHANGES

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THAT
THE INSURED'S MAILING ADDRESS IS AMENDED TO READ AS FOLLOWS:

7785 BAYMEADOWS WAY, SUITE 200
JACKSONVILLE, FL 32256

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

08/19/2005 EH

Authorized Representative Signature

IL 12 01 11 85          Copyright, Insurance Services Office, Inc.,  1983          Page 1 of 1
                        Copyright, ISO Commercial Risk Services, Inc.,  1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM



¶THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change Number ___1___

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| GL183286 | 05/24/2005 | COLONY INSURANCE COMPANY |
| **NAMED INSURED** | | **AUTHORIZED REPRESENTATIVE** |
| MONTECITO INVESTMENT | | WESTROPE & ASSOCIATES |

COVERAGE PARTS AFFECTED

COMMERCIAL GENERAL LIABILITY

CHANGES

IN CONSIDERATION OF A RETURN PREMIUM OF ████., IT IS HEREBY UNDERSTOOD AND AGREED THAT THE FOLLOWING LOCATION IS DELETED FROM THIS POLICY IN IT'S ENTIRETY:

LOCATION #5 - 1090 BELLA VISTA BLVD. ST. AUGUSTINE, FL  32084

IT IS FURTHER AGREED THAT FORM CG2134-0187 – EXCLUSION – DESIGNATED WORK IS ADDED, SEE FORM ATTACHED.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.


08/11/2005  SJG

Authorized Representative Signature

Page 1 of 1

IL 12 01 11 85        Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

03/12/2010 11:22 AM
10/12/2009 03:28 PM

CL 447
(1-87)

POLICY NUMBER: GL183286

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

CG 21 34 01 87

# EXCLUSION - DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

SCHEDULE

Description of your work:

ALL CONSTRUCTION OPERATIONS PERTAINING TO APARTMENT TO CONDOMINIUM CONVERSION.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1986

03/12/2010 11:23 AM
10/12/2009 03:33 PM

JUL. 26. 2005   9:06AM

## POLICYHOLDER DISCLOSURE
## NOTICE OF INSURANCE COVERAGE FOR CERTIFIED ACTS OF TERRORISM

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States; to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your policy may be affected as follows:

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

You should also know that your policy does not provide coverage for acts of terrorism that are not certified by the Secretary of the Treasury.

### Election or Rejection of Certified Terrorism Insurance Coverage

You must elect or reject this coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of the Act, before the effective date of this policy. Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.

☐ Coverage election.
I hereby elect to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act for a prospective annual premium of   $9,502   . I understand that I will not have coverage for losses arising from any non-certified acts of terrorism.

OR

☑ Coverage rejection.
I hereby elect not to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act. I understand that I will not have coverage for any losses arising from certified or non-certified acts of terrorism.



_____
Policyholder/Applicant's Signature
Must be person authorized to sign for all insureds.

DAmien Barr
Print Name

MONTECITO INVESTMENT
Named Insured

7/26/05
Date

Colony Insurance Company
Insurance Company

To Be Assigned
Policy Number
574214
Submission Number
24007
Producer Number
WESTROPE & ASSOCIATES
Producer Name
601 W. 47TH ST.
Street Address
KANSAS CITY, MO 64112
City, State, Zip

The producer shown above is the wholesale insurance broker your local insurance agent used to place your insurance coverage with us. Please discuss this Disclosure with your agent before signing.

TRIA2002Notice-1202                   ◆ COLONY                        Page 1 of 1

**EXHIBIT "B"**

12/31/2013 2:21:25 PM Batch: 8385977

1    Barry C. Vaughan, State Bar No. 129283
2    Jessica L. Thompson, State Bar No. 243162
     KASDAN SIMONDS WEBER & VAUGHAN LLP
     19900 MacArthur Boulevard, Suite 850
3    Irvine, California 92612-6510
     Telephone:  (949) 851-9000
4    Facsimile:  (949) 833-9455
     Email:  bvaughan@kasdansimonds.com
5
6    Attorneys for Plaintiff

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                COUNTY OF ORANGE – CIVIL COMPLEX CENTER

10

11   LA VISTA AT LAGUNA NIGUEL          )  Case No.:  30-2010-00352618
     COMMUNITY ASSOCIATION, a California )
12   non-profit mutual benefit corporation, )  Assigned for all purposes to:
                                          )  Judge:  Hon. Ronald Bauer
13                Plaintiff,              )  Dept:   CX-103
                                          )
14   v.                                   )
                                          )  SECOND AMENDED COMPLAINT FOR
15   MONTECITO CCV, LLC, a Delaware      )  DAMAGES:
     corporation; MONTECITO COUNTRY      )
16   CLUB, LP, a Florida limited partnership; )  1. NEGLIGENCE;
     MONTECITO COUNTRY CLUB, LLC, a      )  2. NEGLIGENCE PER SE;
17   Florida limited liability company;   )  3. BREACH OF FIDUCIARY DUTIES;
     MONTECITO PROPERTY COMPANY,         )  4. BREACH OF COVENANTS,
18   LLC, a limited liability company; EDWARD )     CONDITIONS, AND RESTRICTIONS;
     W. CONK, II, an individual, CHRISTOPHER )  5. NEGLIGENT MISREPRESENTATION;
19   M. CONK, an individual, JOELLYN E.   )     and
     CONK, an individual, MERRILL LYNCH   )  6. VIOLATION OF CIVIL CODE § 1134
20   L.P. HOLDINGS, INC., a business entity, type )
     unknown, and DOES 1 – 100, inclusive, )  Action Filed:  March 11, 2010
21                                          )  Trial Date:  None Set
                 Defendants.               )
22                                         )
23

24        Plaintiff, LA VISTA AT LAGUNA NIGUEL COMMUNITY ASSOCIATION, a Cali-

25   fornia non-profit mutual benefit corporation, (hereinafter "Plaintiff or "Association") alleges:

26        1.    Plaintiff, at all times herein mentioned, was and is incorporated as a nonprofit mu-

27   tual benefit California corporation established as a common interest development as described in

28   Civil Code sections 1351 with its principal place of business within the County of Orange, State

                                        - 1 -

12/31/2013 2:21:26 PM Batch: 8385977

1  of California. The Association is comprised of condominium units, buildings and structures built

2  and existing upon certain parcels of real property all as more particularly described in the Asso-

3  ciation's "governing documents" as that phrase is defined in Civil Code section 1351 (j) generally

4  known as "La Vista at Laguna Niguel Condominiums" (the "Project").

5        2.     On or about October 1, 2004, Defendant Montecito, or its duly authorized agents

6  recorded a Declaration of Covenants, Conditions and Restrictions and Reservation of Easements

7  in the official records of the County of Orange, State of California as instrument number 2004-

8  000925754 (Original Declaration).

9        3.     On or about October 11, 2005, Defendant Montecito or its duly authorized agents

10  recorded a document entitled "First Amended and Restated Declaration of Covenants, Condition

11  and Restrictions and Reservation of Easements for La Vista at Laguna Niguel Condominiums"

12  (CC&Rs) in the official records of the County of Orange, State of California as instrument num-

13  ber 2005-000799720.

14        4.     The CC&Rs provide that the subject property is to be held, conveyed, encum-

15  bered leased, used and improved subject to the limitations, restrictions, reservations, lights,

16  easements conditions stated in the CC&Rs.

17        5.     By the express terms of the governing documents and pursuant to Code of Civil

18  Procedure § 1368.3, Plaintiff is granted standing, authority and duty to bring this legal action in

19  its own name and on its own behalf.

20        6.     Plaintiff, in accordance with its governing documents and Code of Civil Proce-

21  dure 1368.3, is authorized to bring this action pertaining to damages to the common areas, dam-

22  ages to the separate interests which Plaintiff is obligated to maintain and repair, and damages to

23  separate interests which arise out of, or are integrally related to, damage to the common areas or

24  separate interests which Plaintiff is obligated to maintain and repair. Plaintiff brings this action

25  for damages necessary to repair all defects and deficiencies in said common areas and/or separate

26  interests.

27        7.     Plaintiff is informed and believes, and thereon alleges that, at all times herein

28  mentioned, Defendant Montecito CCV, LLC, a Delaware corporation, was and is a mass produc-

1   er of residential housing and was and is engaged in and doing business in the County of Orange,

2   State of California, including but not limited to inspection, development, conversion, construc-

3   tion improvement, marketing and/or sale of residential housing including the subject Project.

4        8.     Plaintiff is informed and believes, and thereon alleges that, at all times herein

5   mentioned, Defendant Montecito Country Club, LP, a Florida limited partnership, was and is the

6   Manager of Montecito CCV, LLC, and was and is a mass producer of residential housing and

7   was and is engaged and doing business in the County of Orange, State of California, including

8   but not limited to inspection, development, conversion, construction, improvement, marketing

9   and/or sale of residential housing including the subject Project.

10       9.     Plaintiff is informed and believes, and thereon alleges that, at all times herein

11   mentioned, Defendant Montecito Country Club, LLC, a Florida limited partnership, was and is

12   the General Partner of Montecito CCV, LLC, and was and is a mass producer of residential hous-

13   ing and was and is engaged and doing business in the County of Orange, State of California, in-

14   cluding but not limited to inspection, development, conversion, construction, improvement, mar-

15   keting and/or sale of residential housing including the subject Project.

16       9.1     Plaintiff is informed and believes, and thereon alleges that, at all times herein

17   mentioned, Defendant Montecito Property Company, LLC, a limited liability company, was in-

18   volved in and participated in the conversion, and sale of the units in the project which is the sub-

19   ject of this action such that it, as well as others, is responsible for the liabilities of Montecito

20   CCV, LLC.

21       10.     Together, Montecito CCV, LLC, Montecito Country Club, LP, and Montecito

22   Country Club, LLC are referred to herein as Defendant Montecito.

23       11.     Plaintiff is informed and believes, and thereon alleges that, at all times herein

24   mentioned, Defendants Edward W. Conk II, Christopher M. Conk and Joellyn E. Conk (collec-

25   tively, the "Conks") are residents of Santa Barbara County, California, and formerly identified in

26   Plaintiffs' complaint as DOES 2, 3 and 4, respectively.

27       11.1     Plaintiff is informed and believes, and thereon alleges that, at all times herein

28   mentioned, Defendant Merrill Lynch L.P. Holdings, Inc. ("Merrill") is a corporate entity of un-

- 3 -

12/31/2013 2:21:28 PM Batch: 8385977

1    known provenance not qualified to do business in the State of California and formerly identified

2    in Plaintiffs' complaint as DOE 5.

3        12.    Defendants DOES 1 through 100, inclusive, whether individual, corporate, asso-

4    ciate or otherwise, whose true names and capacities, at this time, are unknown to Plaintiff are

5    sued by these fictitious names. Plaintiff is informed and believes and thereupon alleges that at all

6    times herein mentioned each of the Defendants sued herein as DOES 1 through 100 was the

7    agent, servant, and employee of his, her or its co-Defendants, and in doing the things hereinafter

8    mentioned was acting in the scope of his, her or its authority as such agent, servant and employee

9    and with the permission, consent and/or ratification of his, her or its co-Defendants; and that

10   each of said fictitiously named co-Defendants, whether an individual, corporation, association, or

11   otherwise, is in some way liable or responsible to the Plaintiff on the facts hereinafter alleged,

12   and caused injuries and damages proximately thereby as hereinafter alleged. At such time as De-

13   fendants' true name become known to Plaintiff, in addition to DOES 1-5, inclusive, Plaintiff will

14   amend this Complaint to insert said true names and capacities.

15       12.1   There is a unity of interest and ownership between Montecito CCV, LLC, on the

16   one hand, and the Conks and Merrill, on the other, such that treating the acts of Montecito CCV,

17   LLC as the acts of that entity alone would sanction and promote injustice and cause an inequita-

18   ble result. The Conks and Merrill manipulated and controlled Montecito CCV, LLC in such a

19   way as to leave that entity as an empty shell with insufficient assets to answer for the reasonably

20   foreseeable liabilities of the entity to Plaintiff. The Conks and Merrill are accordingly liable

21   jointly and severally as the alter egos of Montecito CCV, LLC.

22       12.2   The Conks controlled and directed the activities of Montecito CCV, LLC directly

23   and indirectly through various subordinates, agents, servants and hirelings. The Conks acquired

24   between them an approximately 60% ownership interest in Montecito Country Club Limited

25   Partnership, which in turn had an approximately 20% ownership interest in Montecito CCV,

26   LLC. Montecito Country Club Limited Partnership was one of two members of Montecito CCV,

27   LLC; the other was Montecito Country Club, Inc. The Conks owned Montecito Country Club,

28   Inc. in equal shares of 1/3, 1/3, 1/3. Montecito Country Club, Inc. was the managing member of

- 4 -

1  Montecito CCV, LLC, and through their ownership and control of Montecito Country Club, Inc.,
2  the Conks directed and controlled the activities of Montecito CCV, LLC.

3      12.3   The Conks acquired the Project for approximately $85,800,000. They invested,
4  however, only about $2,300,000 on their own funds in the acquisition. The remainder of the ac-
5  quisition funds the Conks obtained from Corus Bank, N.A. in the form of an approximately
6  $77,112,000 loan and an equity investment of approximately $15,380,000 from Merrill. From
7  additional equity participants the Conks obtained an additional approximately $1,538,560 used in
8  the acquisition.

9      12.4   The Conks acquired the Project during its conversion from apartments to condo-
10  miniums and completed the conversion. During the conversion, and prior to the sale of any units
11  in the Project or the delivery of control of the Association to original condominium purchaser
12  association members, the Conks were advised through their subordinates, agents, servants and
13  hirelings of substantial problems with the construction of the Project, including but not necessari-
14  ly limited to differential movement and water intrusion at pedestrian bridges and supported
15  walkways, improper construction and past maintenance of balcony slopes and related scuppers
16  and membranes and resulting water damage and possible damaged structural framing, deteriorat-
17  ing wood throughout the Project, dry rot and termite infestations at the Project, roofing problems
18  and other problems. Instead of correcting these problems, the Conks budgeted approximately
19  $3,000,000 for a "minor renovation" which mostly included "cosmetic exterior upgrades such as:
20  painting the exterior" of the buildings at the Project. These "upgrades" covered up and masked
21  the problems so that they were not easily observable.

22      12.5   The Conks utilized various legal entities, and layers of legal entities, in their ac-
23  quisition, conversion and sale of the Project. These entities, and their relationship, were de-
24  signed at least in part to shield the Conks from any direct, personal liability while at the same
25  time to allow them to maximize their personal profit from the acquisition, conversion and sale of
26  the Project, which they did.

27      12.6   The Conks, through Montecito CCV, LLC, represented to the purchasers of the
28  condominium units that Montecito CCV, LLC had caused the major systems of the Project to be

- 5 -

1   inspected and that the inspections did not result in the discovery of any substantial defects or

2   malfunctions in any of those systems.  That representation was false when made and the Conks

3   either knew or should reasonably have known that it was false when made.  In so doing, the

4   Conks failed to carry out the requirements of California Civil Code § 1134, and this failure was

5   willful on the part of Montecito and also willful on the part of the Conks, and each of them, ei-

6   ther on their own part or on the part of subordinates, agents, servants and hirelings for whose

7   conduct the Conks are responsible.

8       12.7    The Conks by their conduct misrepresented the condition of the Project to the

9   purchasers and to plaintiff.  The Conks, through Montecito, also failed to establish proper re-

10  serves for the association.  This conduct was willful and constituted gross negligence on the part

11  of Montecito Country Club Limited Partnership and the Conks.

12      12.8    The exact amount of profit the Conks obtained through their formation and con-

13  trol of Montecito and the acquisition, conversion and sale of the Project is as yet unknown but is

14  believed to be in the millions of dollars at a rate of return substantially in excess of 100%.

15      12.9    Although the Conks agreed through Montecito Country Club LLC to do all things

16  necessary to the renovation of the units in the Project, the Conks failed to do so.  The Conks also

17  agreed through Montecito Country Club LLC to at the completion of the conversion and sale of

18  all units in the Project to make adequate provision for all debts and liabilities of Montecito CCV,

19  LLC "including the establishment of a cash escrow fund for contingent liabilities in such amount

20  and for such term as" they might determine.  The Conks did not, however, do this.  Instead they

21  failed to establish a reasonable cash escrow fund for such contingent liabilities, especially liabili-

22  ties alleged herein, leaving Montecito CCV, LLC an empty shell unable to answer for such lia-

23  bilities.

24      12.10   Merrill participated in the acquisition, conversion and sale of the Project, and

25  profiting therefrom, as a "preferred equity" member of Montecito CCV, LLC.  Merrill's capital

26  contribution was approximately $15,380,000, and Merrill's profit, while not known exactly, is

27  estimated to be in excess of $8,000,000.  Under the terms of the limited liability agreement of

28  Montecito CCV, LLC, had control over all major aspects of the Project.  For example, Merrill

- 6 -

111012 1  V:\...HOA\Pleadings\Complaint\lavista7\amendcmplnt.docx

1  had control in that Merrill approved or had the right to review and approve all "Condominium

2  Documents," including the Civil Code § 1134 disclosure statements given to all the original unit

3  purchasers of the Project by Montecito and the Conks.

4      12.11  Merrill also had control of Montecito and the Project in that under the terms of

5  that agreement, Montecito Country Club Limited Partnership and the Conks had the obligation to

6  do all things necessary or appropriate to renovate the units in accordance with all applicable

7  laws, which they failed to do.  This failure to renovate is a direct cause of the damages plaintiff

8  seeks to recover in this action.  Merrill had the right and power to declare this failure as a "Re-

9  moval Event" under the Agreement thereby taking control over Montecito CCV, LLC and the

10  Project.

11      12.12  Montecito Country Club Limited Partnership's failure to renovate the Project was

12  an action inconsistent with the Agreement's "Condominium Conversion Parameters," which

13  failure was in turn a "Major Decision" under the Agreement that required Merrill's written con-

14  sent.  The making of a Major decision by Montecito Country Club Limited Partnership without

15  Merrill's written approval constituted a "Removal Event" under the agreement.  Under the terms

16  of the agreement, a "Removal Event" also included Montecito committing any misrepresenta-

17  tion, gross negligence or willful misconduct.  Thus Merrill either tacitly or expressly approved

18  Montecito Country Club Limited Partnership's failure to renovate the units in the Project and

19  misrepresentations made in the section 1134 disclosure statements.  Alternatively, Merrill failed

20  to exercise its right and power to take control of Montecito CCV, LLC by declaring that a "Re-

21  moval Event" had occurred and rectifying the situation.  Merrill also failed to enforce the provi-

22  sion in the agreement that Montecito Country Club Limited Partnership to establish a reasonable

23  cash escrow fund for such contingent liabilities, especially liabilities alleged herein, leaving

24  Montecito CCV, LLC an empty shell unable to answer for such liabilities.

25      12.13  Merrill profited unduly either by its approval of the aforesaid misconduct of Mon-

26  tecito CCV, LLC, Montecito Country Club Limited Partnership or by its failure to exercise its

27  power to force them to remedy such misconduct or declare the occurrence of a Removal Event,

28  exercise control, and rectify the situation.  This undue profit resulted from the failure of Mon-

1  tecito and the Conks to make the necessary renovations, to fund the appropriate reserves, and to

2  establish a fund for Montecito's reasonably foreseeable contingent liabilities, all of which have

3  damaged plaintiff as alleged in this complaint.

4      13.    Plaintiff has discovered the Project has been and is experiencing construction

5  failures, defective conditions and damages of the real property and structures thereon including

6  without limitation, roofs, building exteriors, windows, doors, foundations, soils, electrical

7  plumbing and mechanical components and systems, and that said components are not o mer-

8  chantable quality nor were they designed, erected, constructed, installed, inspected, maintained

9  repaired and converted, in a workmanlike manner but instead, are defective and a e causing

10  physical damages to other tangible property.

11      14.    Plaintiff is still not fully aware of all of the defects, deficiencies and damages nor

12  the full extent and possible legal significance of the causes or results of the property conditions

13  herein above-described due to the conditions and losses being continual and latent in nature.

14  Plaintiff is an organization of lay individuals who have required professional experts and con-

15  sultants to provide opinions and recommendations related to the existence of latent defects, defi-

16  ciencies and damage related thereto.

17      15.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of

18  them, did inspect and market said condominium units with full knowledge of the existence of

19  defects, deficiencies, and negligently performed work, their causes and consequential physical

20  damage to tangible property.

21      16.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of

22  them, in the financial planning, inspection, design, construction, installation, maintenarce, repair

23  conversion and supervision of the Project, either negligently, willfully and/or intentionally en-

24  gaged in a calculated course of conduct to reduce the costs of development by the use of sub-

25  standard, deficient and inadequate design, construction techniques and materials and/or inade-

26  quately established and/or funded the Association's reserve accounts so that lower assessment

27  were levied thereon to lower the burden on Defendants during the period Defendants had the du-

28  ty to subsidize assessments and in addition to make the condominium units more attractive for

- 8 -

12/31/2013 2:21:32 PM Batch: 8385977

1 | sale.

2 |      17.   Plaintiff is informed and believes and thereon alleges Defendants, and each of

3 | them, ignored repairing or correcting the causes of the defects and damages and pursued a course

4 | of financial planning, inspection, design, construction, installation, maintenance, repair, conver-

5 | sion and supervision of the Project so as to increase their profit from the project at the expense of

6 | the Plaintiff.

7 |      18.   Plaintiff is informed and believes and thereon alleges that Defendants, and each of

8 | them, negligently, willfully and/or intentionally engaged in a course of conduct in its dealings

9 | with the Department of Real Estate (hereinafter "Department") that resulted in the Department

10 | authorizing the sale of Units on specified terms including financial planning, inspection, design,

11 | construction, maintenance, repair, conversion and supervision, which Defendants later ignored

12 | without providing notice or obtaining approval from the Department.

13 |      19.   Plaintiff is informed and believes and thereupon alleges that instead of causing the

14 | necessary and required inspection, reconstruction and repair of the Project Defendants failed to

15 | discover defects, deficiencies and damages and instead have caused cosmetic temporary or inef-

16 | fective repairs to be made to various portions of the Project for the purpose of increasing profits

17 | at Plaintiff's and its members' expense.

18 |      20.   Plaintiff is informed and believes and thereupon alleges that as a direct and prox-

19 | imate result of the defects set forth herein, Plaintiff has suffered damages in an amount precisely

20 | unknown but believed to be within the jurisdiction of this Court in that it has been and will here-

21 | after be required to perform works of repair, restoration and construction to portions of the struc-

22 | tures to prevent further damages and to restore the structures to their proper condition. Plaintiff

23 | will establish the precise amount of such damages at trial, according to proof, for the following

24 | damages:

25 |      a.   For the costs of correction of the problems, including expert investigation rede-

26 |         sign and reconstruction of the defects, deficiencies and damages as alleged herein;

27 |      b.   For out of pocket costs and expenses incurred and for repair of defects deficien-

28 |         cies and consequential damages to the real property and structures thereon;

- 9 -

12/31/2013 2:21:33 PM Batch: 8385977

c. For loss of the financial value that Defendants represented to the Department would be invested in the project to obtain the Department's approval to sell the Units.

## FIRST CAUSE OF ACTION

### (Negligence as to All Defendants)

21. Plaintiff realleges and incorporates by reference Paragraphs 1 through 20 inclusive though fully set forth again herein.

22. Plaintiff is informed and believes and thereupon alleges that Defendants, and each of them, were and are developer, Declarant, builders, general contractors and converters who participated in the process of financial planning, design, engineering, manufacture, construction and/or conversion of condominium units, buildings, improvements and structures of the Project and who performed works of labor, supplied materials, equipment and/or services necessary for the building, conversion and construction, including supervision of construction and conversion of the Project with the knowledge that the condominium units would be sold to and used by members of the public. In so doing, Defendants and each of them, caused the subject premises and subject structures to be designed, engineered constructed and/or converted through their own works of labor, their supplying of materials, equipment and services, and through causing other contractors and subcontractors, to perform work of labor, to supply materials, equipment and services in order to properly convert and complete the Project and subject structures so that it could be sold to and used by member of the public.

23. Plaintiff is informed and believes and thereupon alleges the Defendants, and each of them, negligently, carelessly, tortiously, and wrongfully failed to use reasonable care in the financial planning, preparation, design, manufacture, inspection, construction, maintenance, repair and/or conversion of the real property and structures thereon, including without limitation, soils, roofs, decks, stucco, windows, doors, electrical, plumbing, and mechanical components and systems.

24. Plaintiff is informed and believes and thereupon alleges the Defendants, and each of them, performed financial planning, work, labor and/or services for the construction and conversion of the Project, and each knew or should have known that if the Project was not properly

- 10 -

12/31/2013 2:21:34 PM Batch: 8385977

1  or adequately financially planned for, inspected, designed, engineered, supervised, inspected,

2  converted, maintained, repaired and/or constructed, and that the Plaintiff and its members would

3  be substantially damaged thereby.

4      25.    The Defendants, and each of them, named herein were under a duty to exercise

5  ordinary care as financial planner and budget preparer, builder, contractor, converter and manag-

6  er of the Project to avoid reasonably foreseeable financial and physical damages to the Plaintiff

7  and its members and knew or should have known that Plaintiff and its members would suffer the

8  damages set forth herein if said Defendants, and each of them, failed to perform their duty to

9  cause the subject premises and subject structures to be designed, engineered, supervised, inspect-

10  ed, converted, maintained, repaired and or constructed in a proper workmanlike manner and

11  fashion.

12      26.    Defendants, and each of them, failed and neglected to perform the planning budg-

13  eting, work, labor and services properly or adequately such that the subject premises and subject

14  structures as described herein were designed, engineered, supervised, inspected, converted main-

15  tained, repaired and/or constructed improperly, negligently, carelessly and/or in unworkmanlike

16  manner.

17      27.    Plaintiff is informed and believes and thereupon alleges that as a direct and prox-

18  imate result of the conduct described herein, Plaintiff has suffered damages in an amount pre-

19  cisely unknown, but believed to be within the jurisdiction of this Court in that it has been and

20  will hereafter be required to perform investigations and works of repair, restoration, and con-

21  struction to portions of the structures to prevent further damage and to restore the structures to

22  their proper condition and/or will suffer damages in an amount the full nature and extent of

23  which shall be ascertained according to proof at trial.

24                  **SECOND CAUSE OF ACTION**

25              **(Negligence Per Se as to All Defendants)**

26      28.    Plaintiff incorporates by reference paragraphs 1 through 27, inclusive, as though

27  fully set forth.

28      29.    The conduct, acts and omissions of defendants described above constituted, and

- 11 -

1    continue to constitute, a violation of *Bus. & Prof. Code*, section 11000, *et. seq.*, including but not

2    limited to section 11012 which provides:

3           "It is unlawful for the owner, his agent, or subdivider of the pro-

4          ject, after it is submitted to the Department of Real Estate, to mate-

5          rially change the setup of such offering without first notifying the

6          Department of Real Estate in writing of such intended change. This

7          section only applies to those changes of which the owner, his

8          agent, or subdivider has knowledge or constructive knowledge."

9        30.    Plaintiff is informed and believes and on that basis alleges that Defenda ts' viola-

10    tion of said statutes proximately caused and contributed to Plaintiffs damages, such damages be-

11    ing of the type that the statute was designed to protect against, and Plaintiff being a member of

12    the class of persons for whose protection the statute was adopted.

13        31.    Plaintiff is informed and believes and on that basis alleges that the conduct of De-

14    fendants was negligently, willfully and/or knowingly undertaken by Defendants with the inten-

15    tion of depriving Plaintiff of its legal rights and otherwise causing injury to Plaintiff and/or was

16    undertaken with a reckless disregard for the likely consequences to Plaintiff.

17        32.    As a direct and proximate result of the violation of statutory duties alleged above

18    Plaintiff has suffered damages in an amount to be proved at trial in that Plaintiff has been de-

19    prived of the value of work promised to be performed, which promise was part of the approval

20    process and representations made to the Department, the public in general and Plaintiff specifi-

21    cally. Plaintiff is entitled to the full value of the work promised to be performed absent notice to

22    and an agreement otherwise by the Department.

23    **THIRD CAUSE OF ACTION**

24    **(Breach of Fiduciary Duty as to All Defendants)**

25        33.    Plaintiff incorporates by reference Paragraphs 1 through 32, inclusive, as though

26    full set forth again herein.

27        34.    Plaintiff is informed and believes and thereon alleges that prior to the time that

28    Plaintiff's members took over control and management of the Association, Defendants, and each

- 12 -

12/31/2013 2:21:36 PM Batch: 8385977

1 of them, appointed their own employees, representatives and/or agents, to the directorship an

2 management of Plaintiff, and said Defendants exerted full and complete control over Plaintiff an

3 managed Plaintiff for and on behalf of Plaintiff and its members. By the control and/or manage-

4 ment Defendants put themselves in relation to Plaintiff and its members in a position of a trustee,

5 requiring them to act in scrupulous good faith and candor to assure that in the business, admin-

6 istration financial planning, budgeting, inspection, conversion, maintenance, repair and/or con-

7 struction on behalf of Plaintiff, Defendants acted primarily for Plaintiff and its members benefit

8 and not for the own. Therefore, Defendants, and each of them, owed fiduciary duties of loyalty

9 and disclosure to Plaintiff and its future members.

10  35. Plaintiff is informed and believes and thereon alleges Defendants' fiduciary duties

11 loyalty and disclosure required that the Defendants faithfully adhere to the servitudes and duties

12 set forth in the Declaration Covenants, Conditions and Restrictions and other governing docu-

13 ment which control Plaintiff and the Plaintiff's Project.

14  36. Plaintiff is informed and believes and thereon alleges Defendants' breached their

15 fiduciary duties of loyalty and disclosure which has proximately caused severe economic detri-

16 ment and damage of Plaintiff.

17  37. Plaintiff is informed and believes and thereon alleges Defendants' specific acts

18 which breached their fiduciary duties of loyalty and disclosure, which were only recently discov-

19 ered include but are not limited to:

20   a. Defendants intentionally and/or negligently represented to the Department

21    that Defendants would invest in labor, material and services in an amount

22    equivalent to approximately $1.1 million dollars, and ignored the duty and

23    responsibility owed to Plaintiff, and without notice to or authority from the

24    Department, Defendants invested substantially less, thus causing financial

25    damages to Plaintiff and its members and creating a financial benefit for

26    themselves;

27   b. Defendants intentionally and/or negligently concealed from Plaintiff and

28    it members, the defects and inadequate repairs as hereinbefore alleged;

- 13 -

12/31/2013 2:21:37 PM Batch: 8385977

c,   Defendants negligently and/or knowingly turned the Project over to the Association and its members when the Project w defective (as herein alleged), and said defects were either known, or in the exercise of reasonable diligence should have been known to Defendants, and each of them;

d,   Defendants negligently and/or knowingly structured the finances of Plaintiff such that Plaintiff would not have adequate reserves to pay for the maintenance of the Project and/or correction of the defects herein alleged; and

e,   Defendants negligently and/or intentionally manipulated data by which budget for reserves was established, and through the manipulation caused Plaintiff to be underfunded for actual and foreseeable costs of maintenance, repair and replacement of major component of construction.

38,   As a direct and proximate result of the breaches of fiduciary duty owed by Defendants, and each of them, to Plaintiff and its members as aforementioned, Plaintiff has suffered damages in an amount precisely unknown, but believed to be within the jurisdiction of this Court in that it has been and will hereafter be required to perform investigations and works of repair restoration, and construction to portions of the structures to prevent further damage and to restore the structures to their proper condition and/or will suffer damages in an amount the full nature and extent of which shall be ascertained according to proof at trial.

## FOURTH CAUSE OF ACTION

### (Breach of Declaration of CC&Rs as to All Defendants)

39,   Plaintiff realleges and incorporates by reference paragraphs 1 through 38, as though fully set forth again herein.

40,   The CC&Rs include provisions that require, among other things, the following:

a,   "Owner," as defined by the CC&Rs, refers to any person(s), including Declarant, holding fee simple interest to a Condominium. (CC&Rs, Article 1, section 1.1.43).

b,   The Association is obligated to maintain the Common Property and Im-

- 14 -

1     provements (as those terms are defined in the CC&Rs) in a safe and good

2     working order (CC&Rs, Article 4, section 4.72).

3     c.    Any Owner that damages the Common Area shall be responsible to the

4     Association for the repair and costs of repair to the Common Area.

5     (CC&Rs, Article 4, section 4.7.4).

6     d.    The Association is required to establish no fewer than two separate Asso-

7     ciation Maintenance Funds (Operating and Reserves) into which funds

8     shall be deposited which shall be adequate for ongoing current common

9     expenses and reserves for Improvements which the Board does not expect

10     to perform on an annual or more frequent basis. (Article 7, section 7 .2).

11     41.    Plaintiff is informed and believes and thereon alleges that at the time the CC&R

12 were recorded, and until the last Unit was sold, Defendants, and/or each of them, were "Owners"

13 of Units of the Project.

14     42.    Defendants, and each of them, breached the CC&Rs, by damaging the common

15 are and failing to adequately financially plan and budget for common expenses and long term

16 replacement of major components

17     43.    As a direct and proximate result of the conduct herein alleged Plaintiff has suf-

18 fered damages in an amount precisely unknown, but believed to be within the jurisdiction of this

19 Court in that it has been and will hereafter be required to perform investigations and works of

20 repair restoration, and construction to portions of the structures to prevent further damage and to

21 restore the structures to their proper condition and/or will suffer damages in an amount the full

22 nature and extent of which shall be ascertained according to proof at trial.

23                      **FIFTH CAUSE OF ACTION**

24           **(For Negligent Misrepresentation as to All Defendants)**

25     44.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 43,

26 inclusive, of this Complaint as though set forth in full.

27     45.    Plaintiff is informed and believes and based thereon alleges that at the time of

28 turning the Association over to the members for its operation, business and management Defend-

1  ant represented to Plaintiff that the Project was free from defects, damages and physical and fi-

2  nancial deficiencies. The details of the misrepresentations are set forth in paragraph 12.6 above.

3      46.    Plaintiff is informed and believes and based thereon alleges the representations

4  were untrue.

5      47.    Plaintiff is informed and believes and based thereon alleges Defendants had no

6  reasonable basis to believe the representations were true, but made the representations to the

7  Plaintiff with disregard for the damages that would be caused to Plaintiff.

8      48.    Plaintiff is informed and believes and based thereon alleges Plaintiff had no rea-

9  sonable way of discovering the falsity of the representations and at the time of accepting the rep-

10  resentations as true was unaware of the falsity of the representations and acted in reliance upon

11  the truth of the representations and was justified in relying upon the representations.

12      49.    As a direct and proximate result of the conduct herein alleged Plaintiff has suffer

13  damages in an amount precisely unknown, but believed to be within the jurisdiction of this Court

14  in that it has been and will hereafter be required to perform investigations and works of repair

15  restoration, and construction to portions of the structures to prevent further damage and to restore

16  the structures to their proper condition and/or will suffer damages in an amount the full nature

17  and extent of which shall be ascertained according to proof at trial.

**SIXTH CAUSE OF ACTION**

**(Violation of Civil Code § 1134 as to All Defendants)**

18

19

20      50.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 20

21  inclusive, of this Complaint as though set forth in full.

22      51.    Defendants failed to make the disclosures required by California Civil Code §

23  1134 to the buyers of units in the Country Club Villas project of all substantial defects or mal-

24  functiosn in the major systems in the units and common areas of the premises.

25      52.    Plaintiff has standing to assert the claims of such buyers for damages suffered by

26  them as a result of such failure.

27      53.    Said buyers have been damaged by Defendants' failure to make the necessary dis-

28  closures.

1     WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, a

2  follows:

3     1.     For an accounting of funds spent on the Association in accordance with represen-

4  tations made to the Department of Real Estate;

5     2.     For general and special damages according to proof at trial;

6     3.     For costs of suit incurred by Plaintiff herein; and

7     4.     For such other and further relief as the Court may deem proper and just.

8  Dated:  March 15, 2013

9                     KASDAN SIMONDS WEBER & VAUGHAN, LLP

10

11                     Barry C. Vaughan
                       Jessica L. Thompson
12                     Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              - 17 -